JUDGE GARDEPHE

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# 13 CV 2992

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ENRIQUE SALINAS , ALFREDO
RODRIGUEZ, ANGEL CEDENO,
CHRISTIAN URGILES, FRANCISCO
LUGO, JOSE AMEZQUITA, LUIS
ROBALLO, MIGUEL CERVANTES,
NAHUN FLORES, PABLO ALVARADO,
PABLO FRANCISCO-LOPEZ, VALENTIN
XOCHIPILTECATL and VICENTE LEON

*individually and on behalf of others similarly
situated,*

               *Plaintiffs,*

    -against-

STARJEM RESTAURANT CORP (d/b/a
FRESCO BY SCOTTO) MARION SCOTTO
and ANTHONY SCOTTO
            *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**Rule 23 Class Action & Collective
Action under 29 U.S.C. § 216(b)**

**ECF Case**



       Enrique Salinas, Alfredo Rodriguez, Angel Cedeno, Christian Urgiles, Francisco Lugo,

Jose Amezquita, Luis Roballo, Miguel Cervantes, Nahun Flores, Pablo Alvarado, Pablo

Francisco-Lopez, Valentin Xochipiltecatl and Vicente Leon ("Plaintiffs"), individually and on

behalf of others similarly situated, by and through their attorneys, Michael Faillace & Associates,

P.C., upon their knowledge and belief, and as against Starjem Restaurant Corp (d/b/a Fresco by

Scotto) ("Defendant Corporation" or "Fresco by Scotto") Marion Scotto and Anthony Scotto

(together with Defendant Corporation, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are present and former employees of Defendants "Starjem Restaurant

Corp." (d/b/a Fresco by Scotto) Marion Scotto and Anthony Scotto.

2.     Defendants own, operate, and/or control a restaurant located at 34 East 52nd

Street, New York, NY 10022 under the name "Fresco by Scotto".

3.     Plaintiffs were ostensibly employed by Defendants as busboys and food runners,

but were also required to perform various other restaurant duties, such as washing dishes,

cleaning tables, cleaning silver, cleaning glasses at the bar, cleaning walls, photographs, and

windows, flower pots, organizing chairs, sweeping and mopping, washing cups, transporting

wooden and metal screens for parties, transporting chairs for parties (herein after "non-tipped

duties).

4.     At all times relevant to this complaint, Plaintiffs worked for Defendants in excess

of 40 hours per week, without appropriate compensation for the hours over 40 per week that they

worked. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked,

failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of

pay, or for any additional overtime premium. Further, Defendants failed to pay Plaintiffs the

required "spread of hours" pay for any day in which they had to work over 10 hours per day.

5.     Defendants employed and accounted for the Plaintiffs as busboys and food

runners in their payroll, but in actuality their duties have required greater or equal time spent in

non-tipped functions such as maintenance, cleaning, food preparation and kitchen assistance.

6.     Regardless, at all times Defendants paid Plaintiffs at the lowered tip-credit rate.

2

7.      However, under state law Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

8.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying them at the minimum wage rate, and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them as food runners and busboys instead of as non-tipped employees.

9.      Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees. At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     For at least six years prior to the filing of this action – the statute of limitations under the New York State Labor Law – continuing to the present, Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other restaurant employees' tips and made unlawful deductions from Plaintiffs' and other restaurant employees' wages.

11.     Specifically, Plaintiffs and members of the Class were required to pool their tips with the entire service team. However, participating in the tip pool was an expediter and an employee known as a "stocker," neither of whom performed any direct customer service.

12.     The expediter's job duties were performed in the kitchen and, therefore, expediters did not engage in direct customer service. Similarly, the stocker duties (restock glasses, silverware, and plates) did not result in them engaging in direct customer service.

13.     Plaintiffs and members of the Class were also illegally required to share their tips with managers.

14.     In addition, Defendants retained and/or misappropriated tips paid by patrons for banquets and/or private events.

15.     Defendants required certain customers to pay a percentage of their bills as a gratuity. However, Defendants did not distribute this gratuity in its entirety to tipped employees.

16.     .Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

17.     Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and of all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b)

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

19.     Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district,

20.     Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

## THE PARTIES
### *Plaintiffs*

21.     Enrique Salinas ("Plaintiff Salinas or "Mr. Salinas") is an adult individual residing in Queens County, New York. He has been employed by Defendants from approximately 2006 until the present date.

22.     Alfredo Rodriguez ("Plaintiff Rodriguez" or "Mr. Rodriguez") is an adult individual residing in Queens County, New York. Plaintiff Rodriguez has been employed by Defendants from approximately March 2011 until the present date.

23.     Angel Cedeno ("Plaintiff Cedeno" or "Mr. Cedeno") is an adult individual residing in Kings County, New York. Plaintiff Cedeno has been employed by Defendants from approximately March 2010 until the present date.

24.     Christian Urgiles ("Plaintiff Urgiles" or "Mr. Urgiles") is an adult individual residing in Queens County, New York. He has been employed by Defendants from approximately 2006 until the present date.

25.     Francisco Lugo ("Plaintiff Lugo" or "Mr. Lugo") is an adult individual residing in Queens County, New York. He has been employed by Defendants from approximately November 2011 until the present date.

26.     Jose Amezquita (Plaintiff "Amezquita" or "Mr. Amezquita") is an adult individual residing in Bronx County, New York. He has been employed by Defendants from January 2012 until the present date.

27.     Luis Roballo (Plaintiff "Roballo" or "Mr. Roballo") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately the end of 2009 until on or about April 4th, 2013.

28.     Miguel Cervantes (Plaintiff "Cervantes" or "Mr. Cervantes") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately 2000 until on or about February 2013.

29.     Nahun Flores (Plaintiff "Flores" or "Mr. Flores") is an adult individual residing in Queens County, New York. He has been employed by Defendants from approximately 1998 until the present date.

30.     Pablo Alvarado (Plaintiff "Alvarado" or "Mr. Alvarado") is an adult individual residing in Kings County, New York. He was employed by Defendants from approximately 1998 until on or about November 2012.

31.     Pablo Francisco (Plaintiff "Francisco" or "Mr. Francisco") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately November 2007 until on or about January 15th, 2012.

32.     Valentin Xochipiltecatl (Plaintiff "Xochipiltecatl" or "Mr. Xochipiltecatl") is an adult individual residing in New York County, New York. He was employed by Defendants from approximately May 2009 until on or about August 2010.

33.     Vicente Leon (Plaintiff "Leon" or "Mr. Leon") is an adult individual residing in Kings County, New York. He has been employed by Defendants from approximately 1999 until the present date.

*Defendants*

34.     At all times relevant to this complaint, Defendants own, operate, and/or control an Italian style restaurant located at 34 East 52nd Street, New York, NY 10022, under the name "Fresco by Scotto".

35.     Upon information and belief, Starjem Restaurant Corp is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 34 East 52nd Street, New York, NY 10022.

36.     Defendant Marion Scotto is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Marion Scotto is sued individually in her capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

37.     Upon information and belief, Defendant Marion Scotto possesses or possessed operational control over Defendant Corporation possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

38.     Defendant Marion Scotto determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

39.     Defendant Anthony Scotto is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Anthony Scotto is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

40.     Upon information and belief, Defendant Anthony Scotto possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

41.     Defendant Anthony Scotto determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS
### *Defendants Constitute Joint Employers*

42.     Defendants operate an Italian style restaurant under the name "Fresco by Scotto" located in the Midtown East Section of Manhattan. .

43.     Upon information and belief, Individual Defendant Marion Scotto possesses operational control over the Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

44.     Upon information and belief, Individual Defendant Anthony Scotto possesses operational control over the Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

45.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

46.     Each Defendant possessed substantial control over Plaintiffs (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

8

47.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

48.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

49.     Upon information and belief, Individual Defendants Marion and Anthony Scotto operate Defendant Corporation as either an alter ego of themselves, and/or fail to operate Defendant Corporation as entities legally separate and apart from themselves, by, among other things:

        a.   failing to adhere to the corporate formalities necessary to operate the Defendant Corporation as separate and legally distinct entity;

        b.   defectively forming or maintaining the Defendant Corporation, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

        c.   transferring assets and debts freely as between all Defendants;

        d.   operating the Defendant Corporation for their own benefit as the sole or majority shareholder;

        e.   operating the Defendant Corporation for their own benefit and maintaining control over it as a closed corporation or closely held controlled entity;

        f.   intermingling assets and debts of their own with the Defendant Corporation;

        g.   diminishing and/or transferring assets to protect their own interests; and

        h.   other actions evincing a failure to adhere to the corporate form.

50.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of compensation in exchange for their services.

51.     In each year from 2007 to the present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

52.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used and sold daily at Fresco by Scotto, such as meats and beverages, were produced outside the state of New York.

### Plaintiffs

53.     Plaintiffs are present and former employees of Defendants, who are/were ostensibly employed as busboys and food runners, but perform(ed) the non-tip tasks described above.

54.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b)

### Plaintiff Enrique Salinas

55.     Plaintiff Salinas has been employed by Defendants from approximately March 2006 until the present date.

56.     Defendants ostensibly have employed Plaintiff Salinas as a busboy.

57.     However, throughout his employment with Defendants, Plaintiff Salinas has spent over half of his workday performing non-busboy, non-tipped duties described above.

58.     Plaintiff Salinas regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

59.     Plaintiff Salinas's work duties have required neither discretion nor independent judgment.

60.     Plaintiff Salinas regularly has worked in excess of 40 hours per week.

61.     From approximately April 2007 until on or about May 2011, Plaintiff Salinas worked a schedule from 10:00 a.m. until on or about 3:30 p.m. three days a week and from 4:00 p.m. until on or about 12:00 a.m.  five or six days per week(Typically 56.5 to 64.5 hours per week).

62.     From approximately May 2011 until the present date, Plaintiff Salinas has worked a schedule from 10:00 a.m. until on or about 3:30 p.m. three (3) times per week and from 4:00 p.m. until on or about 12:00 a.m. four  (4) days per week. (Typically 48.5 hours per week).

63.     Throughout his employment with Defendants, Plaintiff Salinas has been paid his wages by check

64.     From approximately April 2007 until on or about May 2011, Plaintiff was paid a flat rate of $4.60 per hour.

65.     From approximately May 2011 until the present date, Plaintiff has been paid a flat rate of $5.00 per hour.

66.     Plaintiff Salinas's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

67.     Plaintiff Salinas has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

68.     Defendants also have retained and/or misappropriated a percentage of tips paid by patrons for banquets and private events.

69.     Although Defendants required customers to pay a percentage of their bills as a gratuity, Defendants did not distribute this gratuity to tipped employees, such as Mr. Salinas.

70.     Plaintiff Salinas was never notified by Defendants that his tips would be included as an offset for wages.

71.     Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Salinas' wages.

72.     Although Defendants provided Mr. Salinas with a document accounting for his hours worked, this document falsely reflected only 35-40 hours per week during the period of time when he actually was working around 60 hours per week.

73.     No notification, either in the form of posted notices, or other means, has been given to Plaintiff Salinas regarding overtime and wages under the FLSA and NYLL.

74.     Although Plaintiff Salinas has been required to keep track of his start and stop time since May 2011, the system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

75.     Defendants never have provided Plaintiff Salinas with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

76.     Defendants never have provided Plaintiff Salinas with a written notice, in English and in Spanish (Plaintiff Salinas' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

77.     Defendants have required Plaintiff Salinas to purchase "tools of the trade" with his own funds—including approximately 12 dress shirts for $30 each, 20 dress pants for $60

each, 20 ties for $15 each and 10 pairs of dress shoes  for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Salinas has been required to purchase as a busboy is approximately $2,660.00.

78.     Defendants have deducted $9.00 weekly from Mr. Salina's paycheck as a fee for cleaning his uniform.  However, Defendants have never cleaned his uniform.  It is Mr. Salinas who is responsible and pays for cleaning his own uniform.

### Plaintiff Alfredo Rodriguez

79.     Plaintiff Rodriguez has been employed by Defendants from approximately March 2011 until the present date.

80.      Defendants ostensibly employ Plaintiff Rodriguez as a busboy.

81.     However, throughout his employment with Defendants, Plaintiff Rodriguez has spent over two hours per day performing the non-bus boy, non-tipped duties described above.

82.     Plaintiff Rodriguez regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

83.     Plaintiff Rodriguez' work duties have required neither discretion nor independent judgment.

84.     Plaintiff Rodriguez regularly has worked in excess of 40 hours per week.

85.     From approximately March 2011 until the present date, Plaintiff Rodriguez has worked 5 to 8 shifts per week that range from 10:00 a.m. until on or about 3:00 p.m. or from 4:00 p.m. until on or about 11:00 a.m. (Typically 28 to 43 hours per week).

86.     Throughout his employment with Defendants, Plaintiff Rodriguez has been paid his wages by check.

87.     Throughout his tenure with Defendants, Mr. Rodriguez has been paid $5 per hour.

13

88.      Plaintiff Rodriguez' pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

89.      Plaintiff Rodriguez has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

90.      Defendants also have retained and/or misappropriate a percentage of tips paid by patrons for banquets and private events.

91.      Although Defendants require certain customers to pay a percentage of their bills as a gratuity, Defendants do not distribute this gratuity to tipped employees, such as Mr. Rodriguez.

92.      Plaintiff Rodriguez has never been notified by Defendants that his tips would be included as an offset for wages.

93.      Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Rodriguez' wages.

94.      No notification, either in the form of posted notices, or other means, has been given to Plaintiff Rodriguez regarding overtime and wages under the FLSA and NYLL.

95.      Although Plaintiff Rodriguez has been required to keep track of his start and stop time since May 2011, The system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

96.      Defendants never have provided Plaintiff Rodriguez with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

97.      Defendants never have provided Plaintiff Rodriguez with a written notice, in English and in Spanish (Plaintiff Rodriguez' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

98.     Defendants have required Plaintiff Rodriguez to purchase "tools of the trade" with his own funds—including approximately 6 dress shirts for $30 each, 8 black dress pants for $40 each, 6 ties for $15 each and 4 pairs of dress shoes for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Rodriguez has been required to purchase as a busboy is approximately $1090.00.

99.     Defendants have deducted $9.00 weekly from Mr. Rodriguez' paycheck for cleaning his uniform. However, Defendants have never once cleaned his uniform. It is Mr. Rodriguez who is responsible and pays for cleaning his own uniform.

### *Plaintiff Angel Cedeno*

100.    Plaintiff Cedeno has been employed by Defendants from approximately March 2010 until the present date.

101.    Plaintiff Cedeno is ostensibly employed by Defendants as a busboy.

102.    However, throughout his employment with Defendants, Plaintiff Cedeno has spent over half of his workday performing the non-busboy, non-tipped duties described above.

103.    Plaintiff Cedeno regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

104.    Plaintiff Cedeno's work duties have required neither discretion nor independent judgment.

105.    From approximately March 2010 until the present date, Plaintiff Cedeno has worked from 10:00 a.m. to on or about 3:00 p.m. Mondays through Saturdays. (Typically 30 hours per week).

106.    Throughout his employment with Defendants, Plaintiff Cedeno has been paid his wages by check.

107.   Plaintiff Cedeno has been paid a flat rate of $5.00 per hour.

108.   Plaintiff Cedeno's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

109.   Plaintiff Cedeno has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

110.   Defendants also have retained and/or misappropriated a percentage of tips paid by patrons for banquets and private events.

111.   Although Defendants require certain customers to pay a percentage of their bills as a gratuity, Defendant do not distribute this gratuity to tipped employees, such as Mr. Cedeno.

112.   Plaintiff Cedeno has never been notified by Defendants that his tips would be included as an offset for wages.

113.   Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Cedeno's wages.

114.   No notification, either in the form of posted notices, or other means, has been given to Plaintiff Cedeno regarding overtime and wages under the FLSA and NYLL.

115.   Although Plaintiff Cedeno has been required to keep track of his start and stop time since May 2011, the system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

116.   Defendants never have provided Plaintiff cedeno with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

117.   Defendants never have provided Plaintiff Cedeno with a written notice, in English and in Spanish (Plaintiff Cedeno's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

118.     Defendants have required Plaintiff Cedeno to purchase "tools of the trade" with his own funds—including approximately 6 dress shirts for $30 each, 9 black dress pants for $40 each, 10 ties for $15 each and 6 pairs of dress shoes for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Cedeno has been required to purchase as a busboy is approximately $1,170.00.

119.     Defendants have deducted $9.00 weekly from Mr. Cedeno's paycheck as a fee for cleaning his uniform.  However, Defendants have never cleaned his uniform. It is Mr. Cedeno who is responsible and pays for cleaning his uniform.

### *Plaintiff Christian Urgiles*

120.     Plaintiff Urgiles has been employed by Defendants from approximately 2006 until the present date.

121.     Defendants ostensibly have employed Plaintiff Urgiles as a busboy.

122.     However, throughout his employment with Defendants, Plaintiff Urgiles has spent over half of his workday performing the non-busboy, non-tipped duties described above.

123.     Plaintiff Urgiles regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

124.     Plaintiff Urgiles' work duties have required neither discretion nor independent judgment.

125.     Plaintiff Urgiles regularly has worked in excess of 40 hours per week.

126.     From approximately April 2007 until on or about May 2008, Plaintiff Urgiles worked a schedule from 10:00 a.m. until on or about 3:00 p.m. and from 4:00 p.m. until on or about 11:30 a.m. or 12:00 a.m. 5 days a week and from 3:00p.m. Until on or about 12:00 a.m. on Saturdays (typically 74 hours per week).

127.    From approximately May 2008 until the present date, Plaintiff Urgiles has worked from 10:00 a.m. to 3:00 p.m. and again from 4:00 p.m. to 11:00 p.m. Mondays and Tuesdays and from 10:00 a.m. until 3:00 p.m. on Fridays (typically 29 hours per week).

128.    Throughout his employment with Defendants, Plaintiff Urgiles has been paid his wages by check.

129.    From approximately April 2007 until on or about May 2008, Plaintiff Urgiles was paid a flat rate of $4.60 per hour.

130.    From approximately May 2008 until the present date, Plaintiff Urgiles has been paid a flat rate of $5 per hour.

131.    Plaintiff Urgiles's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

132.    Plaintiff Urgiles has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

133.    Defendants also have retained and/or misappropriated a percentage of tips paid by patrons for banquets and private events.

134.    Although Defendants require certain customers to pay a percentage of their bills as a gratuity, Defendant do not distribute this gratuity to tipped employees, such as Mr. Urgiles.

135.    Plaintiff Urgiles was never notified by Defendants that his tips would be included as an offset for wages.

136.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Urgiles' wages.

137.     Although Defendants provided Mr. Urgiles with a document accounting for his alleged hours worked, this document falsely reflected only 40 hours per week during the period of time when Plaintiff Urgiles actually worked 74 hours per week.

138.     No notification, either in the form of posted notices, or other means, has been given to Plaintiff Urgiles regarding overtime and wages under the FLSA and NYLL.

139.     Although Plaintiff Roballo has been required to keep track of his start and stop time since May 2011, the system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

140.     Defendants never have provided Plaintiff Urgiles with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

141.     Defendants never have provided Plaintiff Urgiles with a written notice, in English and in Spanish (Plaintiff Urgiles' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

142.     Defendants have required Plaintiff Urgiles to purchase "tools of the trade" with his own funds—including approximately 13 dress shirts for $30 each, 18 dress pants for $40 each, 20 ties for $15 each and 12 pairs of dress shoes for $85 each. Thus, the total cost of the "tools of the trade" that Plaintiff Urgiles has been required to purchase as a busboy is approximately 2,430.00.

143.     Defendants have deducted $9.00 weekly from Mr. Urgiles' paycheck as a fee for cleaning his uniform. However, Defendants have never once cleaned his uniform. It is Mr. Urgiles who is responsible for and pays for cleaning his own uniform.

### *Plaintiff Francisco Lugo*

144.    Plaintiff Lugo has been employed by Defendants from approximately November 2011 until the present date.

145.    Defendants ostensibly have employed Plaintiff Lugo as a busboy.

146.    However, throughout his employment with Defendants, Plaintiff Lugo has spent over half of his workday performing the non-busboy, non-tipped duties described above.

147.    Plaintiff Lugo regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

148.    Plaintiff Lugo's work duties have required neither discretion nor independent judgment.

149.    From approximately November 2011 until the present date, Plaintiff Lugo has worked from 10:00 a.m. until on or about 10:00 p.m. 2 (two) days per week, and from 10:00 a.m. until on or about 3:00 p.m. (4) days per week (Typically 36 hours per week).

150.    Throughout his employment with Defendants, Plaintiff Lugo has been paid his wages by check

151.    From approximately November 2011 until the present date. Plaintiff Lugo has been paid a flat rate of $5.00 per hour.

152.    Plaintiff Lugo's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

153.    Plaintiff Lugo has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

154.    Defendants also have retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

155.    Although Defendants required customers to pay a percentage of their bills as a gratuity, Defendants did not distribute this gratuity to tipped employees, such as Mr. Lugo.

156.    Plaintiff Lugo was never notified by Defendants that his tips would be included as an offset for wages.

157.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Lugo's wages.

158.    No notification, either in the form of posted notices, or other means, has been given to Plaintiff Lugo regarding overtime and wages under the FLSA and NYLL.

159.    Although Plaintiff Lugo has been required to keep track of his start and stop time, The system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work. Defendants never have provided Plaintiff Lugo with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

160.    Defendants never have provided Plaintiff Lugo with a written notice, in English and in Spanish (Plaintiff Lugo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

161.    Defendants have required Plaintiff Lugo to purchase "tools of the trade" with his own funds—including approximately 4 dress shirts for $30 each, 4 dress pants for $60 each, 6 ties for $15 each and 4 pairs of dress shoes  for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Lugo has been required to purchase as a busboy is approximately $770.00.

162.    Defendants have deducted $9.00 weekly from Mr. Lugo's paycheck as a fee for cleaning his uniform.  However, Defendants have never cleaned his uniform.  It is Mr. Lugo who is responsible and pays for cleaning his own uniform.

*Plaintiff Jose Amezquita*

163.    Plaintiff Amezquita has been employed by Defendants from approximately January 2012 until the present date.

164.    Defendants ostensibly have employed Plaintiff Amezquita as a busboy.

165.    However, throughout his employment, Plaintiff Amezquita has spent over half of his workday performing the non-busboy, non-tipped duties described above.

166.    Plaintiff Amezquita regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

167.    Plaintiff Amezquita's work duties have required neither discretion nor independent judgment.

168.    From approximately January 2012 until the present date, Plaintiff Amezquita has worked a schedule from 10:00 a.m. until on or about 10:00 p.m. 2 (two) days per week, and from 10:00 a.m. until on or about   3:00 p.m. (4) days per week (Typically 36 hours per week).

169.    Throughout his employment with Defendants, Plaintiff Amezquita has been paid his wages by check

170.    From approximately January 2012 until the present date, Plaintiff Amezquita has been paid a flat rate of $5.00 per hour.

171.    Plaintiff Amezquita's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

172.    Plaintiff Amezquita has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

173.    Defendants also have retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

174.    Although Defendants required customers to pay a percentage of their bills as a gratuity, Defendants do not distribute this gratuity to tipped employees, such as Mr. Amezquita.

175.    Plaintiff Amezquita has never been notified by Defendants that his tips would be included as an offset for wages.

176.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Amezquita's wages.

177.    Although Plaintiff Amezquita has been required to keep track of his start and stop time, The system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

178.    No notification, either in the form of posted notices, or other means, has been given to Plaintiff Amezquita regarding overtime and wages under the FLSA and NYLL.

179.    Defendants never have provided Plaintiff Amezquita with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

180.    Defendants never have provided Plaintiff Amezquita with a written notice, in English and in Spanish (Plaintiff Amezquita's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

181.    Defendants have required Plaintiff Amezquita to purchase "tools of the trade" with his own funds—including approximately 4 dress shirts for $30 each, 8 dress pants for $50 each, 6 ties for $15 each and 3 pairs of dress shoes for $100 each. Thus, the total cost of the "tools of the trade" that Plaintiff Amezquita has been required to purchase as a busboy is approximately $910.00.

182.    Defendants illegally have deducted $9.00 from Mr. Amezquita's paycheck for cleaning his uniform, when in fact it is Mr. Amezquita who cleans his own uniform.

### *Plaintiff Luis Roballo*

183.    Plaintiff Roballo was employed by Defendants from approximately January 2009 until on or about April 4th, 2013.

184.    Plaintiff Roballo was ostensibly employed by Defendants as a busboy.

185.    However, throughout his employment, Plaintiff Roballo spent over half of his workday performing the non-busboy, non-tipped duties described above.

186.    Plaintiff Roballo regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

187.    Plaintiff Roballo's work duties required neither discretion nor independent judgment.

188.    Plaintiff Roballo regularly worked in excess of 40 hours per week.

189.    From approximately January 2009 until on or about May 2011, Plaintiff Roballo worked a schedule from 10:00 a.m. until on or about 3:00 p.m. and from 4:00 p.m. to 11:30 p.m. three (3) days per week, from 10:00 a.m.- to 3:00 p.m. one(1) day per week and from 4:00 p.m. to 11:30 p.m. two(2)days per week (Typically 57.5 hours per week).

190.    From approximately May 2011 to April 2013, Plaintiff Roballo worked from 4:00 p.m. to 10:00 p.m. three (3) days per week and from 10:00 a.m. to 3:00 p.m. two (2) or three (3) days per week (typically 28 to 33 hours per week).

191.    Throughout his employment with Defendants, Plaintiff Roballo was paid his wages by check.

192.    From approximately January 2009 until on or about May 2011, Plaintiff Roballo was paid a flat rate of $4.65 per hour.

193.    From approximately May 2011 until April 2013, Plaintiff Roballo was paid a flat rate of $5.00 per hour.

194.    Plaintiff Roballo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

195.    Plaintiff Roballo was illegally required to share a percentage of his tips with managers, whom Defendants called "Captains".

196.    Defendants also retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

197.    Although Defendants required some customers to pay a percentage of their bills as a gratuity, Defendants did not distribute this gratuity to tipped employees, such as Mr. Roballo.

198.    Plaintiff Roballo was never notified by Defendants that his tips would be included as an offset for wages.

199.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Roballo's wages.

200.    Although Defendants provided Mr. Roballo with a document accounting for hours worked, this document falsely reflected only 40 hours per week when he was required to work 57.5 hours per week.

201.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Roballo regarding overtime and wages under the FLSA and NYLL.

202.    Although Plaintiff Roballo has been required to keep track of his start and stop time since May 2011, the system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

203.    Defendants never provided Plaintiff roballo with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

204.    .Defendants never provided Plaintiff Roballo with a written notice, in English and in Spanish (Plaintiff Roballo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

205.    Defendants required Plaintiff Roballo to purchase "tools of the trade" with his own funds—including approximately 8 dress shirts for $30 each, 12 dress pants for $80 each, 12 ties for $15 each and 10 pairs of dress shoes  for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Roballo was required to purchase as a busboy was approximately $2,180.00.

206.    Defendants deducted $9.00 weekly from Mr. Roballo's paycheck as a fee for cleaning his uniform.  However, Defendants never cleaned his uniform.  It was Mr. Roballo who was responsible and paid for cleaning his own uniform.

### *Plaintiff Miguel Cervantes*

207.    Plaintiff Cervantes was employed by Defendants from approximately 2000 until on or about February 2013.

208.    Plaintiff Cervantes was ostensibly employed by Defendants as a busboy.

209.    However, throughout his employment, Plaintiff Cervantes spent over half of his workday performing the non-busboy, non-tipped duties described above.

210.    Plaintiff Cervantes regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

211.    Plaintiff Cervantes' work duties required neither discretion nor independent judgment.

212.    Plaintiff Cervantes regularly worked in excess of 40 hours per week.

26

213. From approximately April 2007 until on or about May 2011, Plaintiff Cervantes worked a schedule from 10:00 a.m. until on or about 3:00 p.m. and from 4:00 p.m. until on or about 10:30 p.m. three (3)days per week, from 4:00 p.m. to 10:30 p.m. one(1) day per week, and from 10:00 a.m. to 3:00 p.m. one(1) day per week (Typically 49 hours per week).

214. From approximately May 2011 until on or about February 2013, Plaintiff Cervantes worked a schedule from 10:00 a.m. until on or about 3:00 p.m. 3 (three) days per week, and from 4:00 p.m. to 12:00 p.m. (three) days per week (Typically 39 hours per week).

215. Throughout his employment with Defendants, Plaintiff Cervantes was paid his wages by check.

216. From approximately April 2007 until on or about May 2011, Mr. Cervantes was paid a flat rate of $4.60 per hour.

217. From approximately May 2011 until February 2013, Mr. Cervantes was paid a flat rate of $5 per hour.

218. Plaintiff Cervantes's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

219. Plaintiff Cervantes was illegally required to share a percentage of his tips with managers, whom Defendants called "Captains".

220. Defendants also retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

221. Although Defendants required customers to pay a percentage of their bills as a gratuity, Defendants did not distribute this gratuity to tipped employees, such as Mr. Cervantes.

222. Plaintiff Cervantes never WAS notified by Defendants that his tips would be included as an offset for wages.

223.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cervantes' wages.

224.   Although Defendants provided Mr. Cervantes with a document accounting for hours worked, this document falsely reflected only 40 hours per week during the period of time when Mr. Cervantes worked more than 55 hours per week.

225.   No notification, either in the form of posted notices, or other means, was given to Plaintiff Cervantes regarding overtime and wages under the FLSA and NYLL.

226.   Although Plaintiff Cervantes has been required to keep track of his start and stop time since May 2011, The system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

227.   Defendants never provided Plaintiff Cervantes with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

228.   Defendants never provided Plaintiff Cervantes with a written notice, in English and in Spanish (Plaintiff Cervantes' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

229.   Defendants required Plaintiff Cervantes to purchase "tools of the trade" with his own funds—including approximately 10 dress shirts for $30 each, 10 dress pants for $60 each, 10 ties for $15 each and 5 pairs of dress shoes for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Cervantes was required to purchase as a busboy was approximately $1,450.00.

230.   Defendants deducted $9.00 weekly from Mr. Cervantes' paycheck as a fee for cleaning his uniform. However, Defendants never cleaned his uniform. It was Mr. Cervantes who was responsible for and paid for cleaning his own uniform.

### *Plaintiff Nahun Flores*

231.    Plaintiff Flores has been employed by Defendants from approximately 1998 until the present date.

232.    Defendants ostensibly have employed Plaintiff Flores as a busboy.

233.    However, throughout his employment with Defendants, Plaintiff Flores has spent over half of his workday performing the non-busboy, non-tipped duties described above.

234.    Plaintiff Flores regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

235.    Plaintiff Flores's work duties have required neither discretion nor independent judgment.

236.    Plaintiff Flores regularly has worked more than 40 hours per week.

237.    From approximately April 2007 until on or about May 2011, Plaintiff Flores worked a schedule from 10:00 a.m. until on or about 3:30 p.m. and from 4:00 p.m. until on or about 12:00 a.m. 4 (four) days per week, and from either 10:00 a.m. to 3:30 p.m. or 4:00 p.m. until on or about 12:00 a.m. one day per week (Typically 58 to 60 hours per week).

238.    From approximately May 2011 to the present date, Plaintiff Flores has worked from 10:00 a.m. to 3:00 p.m. two(2) or ghree (3) days per week and from 4:00 p.m. to 11:30 p.m. three(3) or four(4) days per week (typically 37.5 to 40 hours per week).

239.    Throughout his employment with Defendants, Plaintiff Flores has been paid his wages by check.

240.    From approximately April 2007 to May 2011, Plaintiff Flores was paid a flat rate of $4.60 per hour

241.    From approximately May 2011 to the present date, Plaintiff Flores has been paid at the flat rate of $5.00 per hour..

242.    Plaintiff Flores's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

243.    Plaintiff Flores has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

244.    Defendants also have retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

245.    Although Defendants required customers to pay a percentage of their bills as a gratuity, Defendants do not distribute this gratuity to tipped employees, such as Mr. Flores.

246.    Plaintiff Flores has never been notified by Defendants that his tips would be included as an offset for wages.

247.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Flores' wages.

248.    Although Defendants provided Mr. Flores with a document accounting for hours worked, this document did not reflect the hours he actually worked prior to May 2011.

249.    No notification, either in the form of posted notices, or other means, has been given to Plaintiff Flores regarding overtime and wages under the FLSA and NYLL.

250.    Although Plaintiff Flores has been required to keep track of his start and stop time since May 2011, The system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

251.    Defendants never have provided Plaintiff Flores with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

252.    Defendants never have provided Plaintiff Flores with a written notice, in English and in Spanish (Plaintiff Flores's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

253.    Defendants have required Plaintiff Flores to purchase "tools of the trade" with his own funds—including approximately 20 dress shirts for $30 each, 20 dress pants for $40 each, 30 ties for $15 each and 10 pairs of dress shoes  for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Flores has been required to purchase as a busboy is approximately $2,650.00.

254.    Defendants have deducted $12.00 weekly from Mr. Flores' paycheck as a fee for cleaning his uniform.  However, Defendants have never once cleaned his uniform.  It is Mr. Flores who is responsible for and paid for cleaning his own uniform.

### Plaintiff Pablo Alvarado

255.    Plaintiff Alvarado was employed by Defendants from approximately 1998 until on or about November 2012.

256.    Defendants ostensibly employed Plaintiff Alvarado as a food runner.

257.    However, throughout his employment with Defendants, Plaintiff Alvarado spent over half of his workday performing the non-tipped duties described above.

258.    Plaintiff Alvarado regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

259.    Plaintiff Alvarado's work duties required neither discretion nor independent judgment.

260.    From approximately April 2007 until on or about May 2011 Plaintiff Alvarado worked a schedule from 10:00 a.m. until on or about 10:30 pm on Mondays and Wednesdays,

31

from 4:00 p.m. until on or about 10:30 p.m. on Tuesdays and Thursdays and from 10:00 a.m. to 3:00 p.m. one day per week (Typically 43 hours per week).

261.    From May 2011 to November 2012, Plaintiff Alvarado worked from approximately 10:00 a.m. to 3:00 p.m. three days a week and from 4:00 p.m. to 10:00 p.m. two days per week (typically 27 hours per week).

262.    Throughout his employment with Defendants, Plaintiff Alvarado was paid his wages by check.

263.    From April 2007 to May 2011, Plaintiff Alvarado was paid a flat rate of $4.60 per hour.

264.    From May 2011 to November 2012, Plaintiff Alvarado was paid at the flat rate of $5.00 per hour.

265.    Plaintiff Alvarado's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

266.    Plaintiff Alvarado was illegally required to share a percentage of his tips with managers, whom Defendants called "Captains".

267.    Defendants also have retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

268.    Although Defendants required certain customers to pay a percentage of their bills as a gratuity, Defendants did not distribute this gratuity to tipped employees, such as Mr. Alvarado.

269.    Plaintiff Alvarado was never notified by Defendants that his tips would be included as an offset for wages.

270.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Alvarado's wages.

271.    Although Defendants provided Mr. Alvarado with a document accounting for hours worked, this document falsely reflected only 20 to 37 hours per week during the period of time when Mr. Alvarado actually worked over 40 hours per week.

272.    No notification, either in the form of posted notices, or other means, has been given to Plaintiff Alvarado regarding overtime and wages under the FLSA and NYLL.

273.    Although Plaintiff Alvarado has been required to keep track of his start and stop time since May 2011, The system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

274.    Defendants never provided Plaintiff Alvarado with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

275.    Defendants never provided Plaintiff Alvarado with a written notice, in English and in Spanish (Plaintiff Alvarado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

276.    Defendants required Plaintiff Alvarado to purchase "tools of the trade" with his own funds—including approximately 12 dress shirts for $30 each, 12 dress pants for $35 each, 12 ties for $15 each and 3 pairs of dress shoes  for $120 each. Thus, the total cost of the "tools of the trade" that Plaintiff Alvarado was required to purchase as a food runner was approximately $1,320.00.

277.    Defendants deducted $9 weekly from Mr. Alvarado's paycheck as a fee for cleaning his uniform.  However, Defendants never cleaned his uniform.  It was Mr. Alvarado who was responsible for and paid for cleaning his own uniform.

### *Plaintiff Pablo Francisco*

278. Plaintiff Francisco was employed by Defendants from approximately November 2007 until on or about January 2012.

279. Plaintiff Francisco was ostensibly employed by Defendants as a busboy

280. However, throughout his employment with Defendants, Plaintiff Francisco spent over half of his workday performing the non-tipped duties described above.

281. Plaintiff Francisco regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

282. Plaintiff Francisco's work duties required neither discretion nor independent judgment.

283. Plaintiff Francisco regularly worked in excess of 40 hours per week.

284. From approximately November 2007 until on or about December 2010 Plaintiff Francisco worked a three (3) days per week from 10:00 a.m. until on or about 11:00 p.m., two (2) days per week from 10:00 a.m. until on or about 3:00 p.m. and two (2) days per week from 4:00 p.m. until on or about 12:00 a.m. (Typically 65 hours per week).

285. From approximately January 2011 until on or about January 15th 2012, Plaintiff Francisco worked two (2) days per week from 10:00 a.m. until on or about 11:00 p.m. and two (2) days from 10:00 a.m. until on or about 3:00 p.m. (Typically 35 hours per week).

286. Throughout his employment with Defendants, Plaintiff Francisco was paid his wages by check.

287. Plaintiff Francisco was paid a flat rate of $4.60 per hour from November 2007 until on or about December 2010.

288.    Plaintiff Francisco was paid a flat rate of $5 per hour from January 2011 until on or about January 2013.

289.    Plaintiff Francisco's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

290.    Plaintiff Francisco was illegally required to share a percentage of his tips with managers, whom Defendants called "Captains".

291.    Defendants also retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

292.    Although Defendants required customers to pay a percentage of their bills as a gratuity, Defendants did not distribute this gratuity to tipped employees, such as Mr. Francisco.

293.    Plaintiff Francisco was never notified by Defendants that his tips would be included as an offset for wages.

294.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Francisco's wages.

295.    Although Defendants provided Mr. Francisco with a document accounting for hours worked, this document falsely reflected less than 40 hours per week during the period when he actually worked over 60 hours per week.

296.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Francisco regarding overtime and wages under the FLSA and NYLL.

297.    Although Plaintiff Francisco has been required to keep track of his start and stop time since May 2011, The system did not work when he arrived and only permitted him to punch-in 30 to 90 minutes after he started to work.

298.    Defendants never provided Plaintiff Francisco with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

299.    Defendants never provided Plaintiff Francisco with a written notice, in English and in Spanish (Plaintiff Francisco's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

300.    Defendants required Plaintiff Francisco to purchase "tools of the trade" with his own funds—including approximately 8 dress shirts for $30 each, 12 dress pants for $50 each, 12 ties for $15 each and 10 pairs of dress shoes for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Francisco was required to purchase as a busboy was approximately $1,940.00.

301.    Defendants deducted $9 weekly from Mr. Francisco's paycheck as a fee for cleaning his uniform. However, Defendants never once cleaned his uniform. It was Mr. Francisco who was responsible for and paid for cleaning his own uniform.

### *Plaintiff Valentin Xochipiltecatl*

302.    Plaintiff Xochipiltecatl was employed by Defendants from approximately May 2009 until on or about August 2010.

303.    Plaintiff Xochipiltecatl was ostensibly employed by Defendants as a busboy

304.    However, throughout his employment, Plaintiff Xochipiltecatl spent over half of his workday performing the non-tipped duties described above.

305.    Plaintiff Xochipiltecatl regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

306.    Plaintiff Xochipiltecatl's work duties required neither discretion nor independent judgment.

307.    Plaintiff Xochipiltecatl regularly worked in excess of 40 hours per week.

308.    From approximately November 2007 until on or about August 2010 Plaintiff Xochipiltecatl worked Mondays and Thursdays from 10:00 a.m. until on or about 10:30 p.m. and Wednesdays from 4:00 p.m. until on or about 1:30 a.m. (Typically 35 hours per week).

309.    Throughout his employment with Defendants, Plaintiff Xochipiltecatl was paid his wages by check.

310.    Plaintiff Xochipiltecatl was paid a flat rate of $5 per hour throughout his entire tenure with Defendants.

311.    Plaintiff Xochipiltecatl's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

312.    Plaintiff Xochipiltecatl was illegally required to share a percentage of his tips with managers, whom Defendants called "Captains".

313.    Defendants also have retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

314.    Although Defendants required customers to pay a percentage of their bills as a gratuity, Defendants did not distribute this gratuity to tipped employees, such as Mr. Xochipiltecatl.

315.    Plaintiff Xochipiltecatl was never notified by Defendants that his tips would be included as an offset for wages.

316.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Xochipiltecatl's wages.

317.    Although Defendants provided Mr. Xochipiltecatl with a document accounting for some hours worked, this document falsely reflected only 20 hours per week.

318.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Xochipiltecatl regarding overtime and wages under the FLSA and NYLL.

319.    Plaintiff Xochipiltecatl was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

320.    Defendants never provided Plaintiff Xochipiltecatl with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

321.    Defendants never provided Plaintiff Xochipiltecatl with a written notice, in English and in Spanish (Plaintiff Xochipiltecatl's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

322.    Defendants required Plaintiff Xochipiltecatl to purchase "tools of the trade" with his own funds—including approximately 2 dress shirts for $30 each, 3 dress pants for $60 each, 3 ties for $15 each and 2 pairs of dress shoes  for $80 each. Thus, the total cost of the "tools of the trade" that Plaintiff Xochipiltecatl was required to purchase as a busboy was approximately $445.00.

323.    Defendants deducted $9.00 weekly from Mr. Xochipiltecatl's paycheck as a fee for cleaning his uniform.  However, Defendants never once cleaned his uniform.  It was Mr. Xochipiltecatl's who was responsible for and paid for cleaning his own uniform.

### *Plaintiff Vicente Leon*

324.    Plaintiff Leon has been employed by Defendants from approximately 1999 until the present date.

325.    Defendants ostensibly have employed Plaintiff Leon as a busboy.

326.    However, throughout his employment with Defendants, Plaintiff Leon has spent half of his workday performing the non-tipped duties described above.

327.    Plaintiff Leon regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

328.    Plaintiff Leon's work duties have required neither discretion nor independent judgment.

329.    Plaintiff Leon regularly has worked in excess of 40 hours per week.

330.    From approximately April 2007 until on or about May 2011 Plaintiff Leon worked Mondays through Saturdays from 10:00 a.m. to on or about 3:00 p.m. and again from 4:00 p.m. to 10:00 a.m. (typically 66 hours per week).

331.    From approximately May 2011 until the present date, Plaintiff Leon has worked from 10:00 a.m. until on or about 2:30 p.m. and again 4:00 p.m. until on or about 10:00 p.m. Mondays; from 5:00 p.m. until on or about 11:00 p.m. Tuesdays; from 4:00 p.m. until on or about 11:00 p.m. on Wednesdays; and from 10:00 a.m. until on or about 2:30 p.m. and again from 5:00 p.m. until on or about 10:30 p.m. on Thursdays, (typically 35 hours per week).

332.    Throughout his employment with Defendants, Plaintiff Leon has been paid his wages by check.

333.    From approximately 2007 until on or about 2009, Plaintiff Leon was paid at the flat rate of $4.60 per hour.

334.    From approximately 2009 until on or about 2011 Plaintiff Leon was paid at the flat rate of $4.65 per hour.

335.    From approximately 2011 until the present date, Plaintiff Leon has been paid at the flat rate of $5 per hour.

336.    Plaintiff Leon's pay has not varied when he has been required to stay later or work a longer day than his usual schedule.

337.    Plaintiff Leon has illegally been required to share a percentage of his tips with managers, whom Defendants called "Captains".

338.    Defendants also have retained and/or misappropriated a percentage of his tips paid by patrons for banquets and private events.

339.    Although Defendants have required customers to pay a percentage of their bills as a gratuity, Defendants have not distributed this gratuity to tipped employees, such as Mr. Leon.

340.    Plaintiff Leon has never been notified by Defendants that his tips would be included as an offset for wages.

341.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Leon's wages.

342.    Although Defendants provided Mr. Leon with a document accounting for hours worked, this document falsely reflected only 25 to 40 hours per week when Plaintiff Leon actually was working approximately 66 hours per week .

343.    No notification, either in the form of posted notices, or other means, has been given to Plaintiff Leon regarding overtime and wages under the FLSA and NYLL.

344.    Although Plaintiff Leon has been required to keep track of his start and stop time since May 2011, The system often does not work when he arrives and only permits him to punch-in 30 to 90 minutes after he starts to work.

345.    Defendants never have provided Plaintiff leon with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

346.    Defendants never have provided Plaintiff Leon with a written notice, in English and in Spanish (Plaintiff Leon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

347.    Defendants have required Plaintiff Leon to purchase "tools of the trade" with his own funds—including approximately 20 shirts for $30 each, 20 pairs of black dress pants for $45 per pair, 6 pairs of shoes for $80 each , 20 ties for $15 each.  Thus, the total cost of the "tools of the trade" that Plaintiff Leon has been required to purchase as a busboy is approximately $2,280.00.

348.    Defendants have deducted  $12.00 weekly from Mr. Leon's paycheck as a fee for cleaning his uniform.  However, Defendants have never once cleaned his uniform.  It is Mr. Leon who has been responsible for and has paid for cleaning his own uniform.

### *Defendants' General Employment Practices*

349.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of 40 hours per week without paying them appropriate minimum wage, overtime, and spread of hours compensation, as required by federal and state laws.

350.    Defendants required Plaintiffs to perform several non-tip-related tasks for over half of each work day, in addition to their primary role as busboys and food runners.

351.    Plaintiffs were employed ostensibly as busboys (tipped employees) by Defendants, although their actual duties included much greater time spent in non-tipped functions.

352.    Plaintiffs were paid at the lowered tip-credited rate by Defendants, however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever were less) (12 N.Y.C.R.R. § 146).

353.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day... in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

354.    Plaintiffs' duties were not incidental to their occupation as food runners or busboys, but instead constituted entirely unrelated occupations with duties such as those outlined above. While performing these duties, Plaintiffs did not receive tips; therefore, they constituted non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiffs worked in these roles.

355.    In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

356.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

357.    Plaintiffs have been victim of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by *inter alia*, willfully denying them their earned tips and not paying them the wages they were owed for the hours they had worked.

358.    As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

359.    This policy and pattern or practice has included depriving tipped workers of a portion of the tips earned during the course of employment.

360.    Defendants unlawfully misappropriated charges purported to be gratuities, received by Plaintiffs and other tipped workers in violation of New York Labor Law § 196-d (2007).

361.    Specifically, Plaintiffs and members of the Class were required to pool their tips with the entire service team. However, participating in the tip pool was an expediter and an employee known as a "stocker," neither of whom performed any direct customer service. The expediter's job duties were performed in the kitchen and, therefore, expediters did not engage in direct customer service. Similarly, the stocker duties (restock glasses, silverware, and plates) did not result in them engaging in direct customer service.

362.    Plaintiffs and members of the Class were also illegally required to share their tips with managers.

363.    In addition, Defendants retained and/or misappropriated tips paid by patrons for banquets and/or private events.

364.    Defendants required certain customers to pay a percentage of their bills as a gratuity. However, Defendants did not distribute this gratuity in its entirety to tipped employees.

365.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

366.   At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

367.   Defendants failed to post required wage and hour posters in the workplace, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' s' relative lack of sophistication in wage and hour laws.

368.   Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

369.   Upon information and belief, this was done to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

370.   Defendants did not provide Plaintiffs s with any document or other statement accurately accounting for their actual hours worked, and setting forth rate of minimum wage and overtime wage.

371.   Defendants also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

372.     Defendants failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

373.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

374.     Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 class Period").

375.    At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

376.    The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

377.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

378.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

379.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

380.    There are questions of law and fact common to the Class including:

a.    what proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.    what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

     c.     what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

     d.     whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

     e.     whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

     f.     whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

     g.     at what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

     h.     what are the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

381.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

382.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

383.    The common questions of law and fact predominate over questions affecting only individual members.

384.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

385.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

### FIRST CAUSE OF ACTION
### (Violation of the Minimum Wage Provisions of the FLSA)

386.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

387.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA and Rule 23 class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

388.    Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), control his terms and conditions of employment, and determine the rate and method of any compensation.

389.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

390.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

391.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

392.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

393.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of the Overtime Provisions of the FLSA)

394.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

395.    Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

396.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

397.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the New York Minimum Wage Act)

398.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

399.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

400.    Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

401.    Defendants, in violation of the NYLL, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

402.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

403.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violation of the Overtime Provisions of the New York Labor Law)

404.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

405.    Defendants, in violation of the NYLL § 190 *et seq.* and associated rules and regulations, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

406.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

407.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

408.    Plaintiffs (and the FLSA and Rule 23 class members) has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER  OF THE NEW YORK COMMISSIONER OF LABOR)

409.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

410.   Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

411.   Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

412.   Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPinG REQUIREMENTS OF THE NEW YORK LABOR LAW)

413.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

414.   Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

415.   Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

416.   Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

417.   Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

418.   Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

## EIGHTH CAUSE OF ACTION

### (Violation of the Unauthorized Deduction Provisions of the NYLL)

419.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

420.    Defendants made unauthorized deductions from Plaintiffs' wages in violation of NYLL § 193.

421.    Plaintiffs have   been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA was willful as

to Plaintiffs and the FLSA and Rule 23 class members;

      (f)     Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

      (g)    Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

      (h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

      (i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

      (j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

      (k)    Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages; and any deductions or credits taken against wages;

      (l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA and Rule 23 class members;

      (m)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or

credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(p)     Declaring that Defendants have violated the tip withholding and the timely payment provisions of Article 6 of the NYLL;

(q)     Declaring that Defendants' violation of the provisions of Article 6 of the NYLL was willful;

(r)     Awarding Plaintiffs and the FLSA class members liquidated damages, interest, costs and attorneys' as provided by Article 6 of the NYLL;

(s)     Awarding Plaintiffs  and the FLSA class members the expenses incurred in this action, including costs and attorney's fees; and

(t)     All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 2, 2013

                                              MICHAEL FAILLACE & ASSOCIATES, P.C.

                                      By:     _____
                                              Michael Faillace [MF-8436]

                                              60 East 42nd Street, Suite 2020
                                              New York, New York 10165
                                              Telephone: (212) 317-1200
                                              Facsimile: (212) 317-1620
                                              *Attorneys for Plaintiffs*