**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ENRIQUE SALINAS , ALFREDO
RODRIGUEZ,ANGEL CEDENO,
CHRISTIAN URGILES,FRANCISCO LUGO,
JOSE AMEZQUITA, LUIS ROBALLO,
MIGUEL CERVANTES, NAHUN FLORES,
PABLO ALVARADO, PABLO
FRANCISCO-LOPEZ, VALENTIN
XOCHIPILTECATL and VICENTE LEON,
individually and on behalf of others similarly
situated,

                  *Plaintiffs*,

        -against-

STARJEM RESTAURANT CORP (d/b/a
FRESCO BY SCOTTO) MARION SCOTTO
and ANTHONY SCOTTO,

                  *Defendants.*

-------------------------------------------------------X

**Index No. 13-cv-2992 (AT)**

 

# PLAINTIFFS' PRETRIAL MEMORANDUM OF LAW

MICHAEL FAILLACE & ASSOCIATES, P.C.
Joshua S. Androphy
60 East 42nd Street, Suite 2020
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiffs*

<u>Table of Contents</u>

**Preliminary Statement**........................................................................................................1

**Argument** .........................................................................................................................2

I.     DEFENDANTS WERE REQUIRED TO PAY PLAINTIFFS AT THE MINIMUM
WAGE RATE RATHER THAN THE LOWER TIP-CREDIT RATE ..........................2

    A.  FLSA Tip-Credit Requirements .....................................................................2

    B.  New York State Law Tip-Credit Requirements ...........................................6

II.    DEFENDANTS MISAPPROPRIATES PLAINTIFFS' TIPS IN VIOLATION OF
NYLL §196-d .............................................................................................................9

III.   PLAINTIFFS WERE NOT COMPENSATED FOR ALL HOURS WORKED, IN
VIOLATION OF THE MINIMUM WAGE AND OVERTIME PROVISIONS OF
THE FLSA AND NYLL ...........................................................................................11

    A.  Before June 2011 .........................................................................................11

    B.  After June 2011 ...........................................................................................12

IV.   PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR UNIFORM AND
EQUIPMENT COSTS ..............................................................................................15

V.    DEFENDANTS VIOLATED THE WAGE NOTICE AND WAGE STATEMENTS
PROVISIONS OF THE NYLL .................................................................................17

VI.   MARION SCOTTO AND ANTHONY SCOTTO JR. WERE EMPLOYERS OF
PLAINTIFFS ............................................................................................................18

VII.  PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER THE FLSA
AND NYLL, AND A THREE YEAR STATUTE OF LIMITATIONS UNDER THE
FLSA ........................................................................................................................21

    A.  Liquidated Damages ...................................................................................21

    B.  Statute of Limitations ..................................................................................23

**Conclusion** ......................................................................................................................**24**

## **Table of Authorities**

**Cases**

*Barenboim v. Starbuck Corp.*, 21 N.Y.2d 460 (2013) ..................................................................... 9

*Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ............................ 19, 21, 22

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984) ............................................. 19

*Chhab v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 135926, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) ...................................................................................................................... 3, 6

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) .............. 5, 7, 8, 18

*Cuzco v. F & J Steaks 37th St, LLC*, 2014 U.S. Dist. LEXIS 72984 (S.D.N.Y. May 28, 2014)... 18

*Encalada v. SDNY 19 Mad Park*, Index No. 13-cv-1926 (PAC) (S.D.N.Y. Nov. 6, 2014) ......... 10

*Fonseca v. Dircksen & Talleyrand Inc.*, 2014 U.S. Dist. LEXIS 52744, 2014 WL 1487279 (S.D.N.Y. April 10, 2014) ............................................................................................................ 3

*Gillian v. Starjem Rest. Corp.*, 2011 U.S. Dist. LEXIS 115833, 2011 WL 4639842 (S.D.N.Y. Oct. 4, 2011) ...................................................................................................................... 4, 24

*Hai Ming Lu v. Jing Fong Restaurant, Inc.*, 503 F. Supp. 2d 706 (S.D.N.Y. 2007) ..................... 7

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901 (S.D.N.Y. 2013) ................................ 21, 22

*He v. Home on 8th Corp.*, 2014 U.S. Dist. LEXIS 114605, 2014 WL 3974670 (S.D.N.Y. August 13, 2014) ................................................................................................................................ 15, 16

*Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) .................................... 21, 22

*Ho v. Sim Enters.*, 2014 U.S. Dist. LEXIS 66408 (S.D.N.Y. May 14, 2014) ................. 21, 22, 23

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ................................................. 18, 19, 20, 21

*Martin v. Tango's Rest., Inc.*, 969 F.2d 1319 (1st Cir. 1992) ........................................................ 5

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). ........................................................... 23

*McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 55425, 2012 WL 1358739 (S.D.N.Y. April 19, 2012) ................................................................................................................... 21, 22, 23

*Merino v. Beverage Plus Am. Corp.*, 2012 U.S. Dist. LEXIS 140679, 2012 WL 4468182, (S.D.N.Y. Sept. 25, 2012) ......................................................................................................... 22

*Moon v. Kwon*, 248 F.Supp.2d 201 (S.D.N.Y. 2002) ................................................................... 22

*Padilla v. Manlapaz*, 643 F.Supp.2d 302 (E.D.N.Y.2009) ............................................................ 8

*Schear v. Food Scope Am., Inc.*, 2014 U.S. Dist. LEXIS 3454, 2014 WL 123305 (S.D.N.Y. Jan. 10, 2014) .................................................................................................................................... 8

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) ......................... 3, 9

*Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808, 2012 WL 28141 (S.D.N.Y. Jan. 5, 2012) .................................................................................................................................... 22

*Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 290 (1985) ......................................... 18

*Widjaja v. Kang Yue USA Corp.*, 2011 U.S. Dist. LEXIS 109007, 2011 WL 4460642 (E.D.N.Y. Sept. 26, 2011);.................................................................................................................. 4

**Statutes**

29 U.S.C. §203.................................................................................................... 2, 3, 18, 19

29 U.S.C. § 207 ............................................................................................................... 11

29 U.S.C. §255................................................................................................................. 23

N.Y.L.L. §195................................................................................................................... 17

N.Y.L.L. §196.................................................................................................................... 8

N.Y.L.L. §198.................................................................................................................... 17

N.Y.L.L. §663 .................................................................................................................. 22


**Other Authorities**

U.S. Department of Labor, Wage and Hour Division Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. July 2013) ("DOL Fact Sheet #15"), available at http://www.dol.gov/whd/regs/compliance/whdfs15.pdf............................................ 5

U.S. Department of Labor, Wage and Hour Division Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Mar. 2011) ("DOL Fact Sheet #15"), available at http://www.dol.gov/whd/regs/compliance/whdfsl5.pdf............................................ 6

**Regulations**

12 NYCRR §137................................................................................................................. 8

12 NYCRR §137-1.3 ........................................................................................................ 11

12 NYCRR §137-1.8 ........................................................................................................ 16

12 NYCRR §146-1.3(b)....................................................................................................... 6

12 NYCRR §146-1.4 ........................................................................................................ 11

12 NYCRR §146-1.8 ........................................................................................................ 16

12 NYCRR §146-2.2 .......................................................................................................... 6

12 NYCRR §146-2.9 .......................................................................................................... 7

12 NYCRR §146-3.4 .......................................................................................................... 7

12 NYCRR §146-3.10(a).................................................................................................... 16

12 NYCRR §146-3.10(b).................................................................................................... 16

29 C.F.R. §§531.50, *et seq.*.............................................................................................. 5

29 C.F.R. §531.35.............................................................................................................. 15

29 C.F.R. §531.51 .............................................................................................................. 6

29 C.F.R. §785.16(a).......................................................................................................... 14

29 C.F.R. §785.19(a).....................................................................................................................14

Plaintiffs Enrique Salinas, Alfredo Rodriguez, Angel Cedeno, Christian Urgiles, Francisco Lugo, Jose Amezquita, Luis Roballo, Miguel Ceravantes, Nahun Flores, Pablo Alvarado, Pablo Francisco-Lopez, Valentin Xochipiltecatl, and Vicente Leon, by their attorneys Michael Faillace & Associates, P.C., submit this pretrial memorandum of law, pursuant to Individual Rule & Practice V(C)(ii).

## PRELIMINARY STATEMENT

The evidence at trial will prove that Defendants failed to pay Plaintiffs minimum wage, overtime and spread of hours wages, as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendants, willfully violating federal and state labor law, paid the Plaintiffs at a lower tip-credit rate when they were ineligible to be paid at that rate. Plaintiffs were ineligible to be paid at that lower tip-credit rate because (1) they spent over 20% of their time at work doing tasks that are not related to service and are not tipped, (2) were required to share their tips with managers of Fresco by Scotto, (3) were required to share their tips with non-service employees who were not eligible to participate in a tip pool, and (4) did not receive proper notice that tips would be an offset for wages.  Relatedly, Plaintiffs are entitled under the NYLL to recover their pro rata portions of gratuities that were shared with ineligible persons.

The evidence at trial also will show that Defendants violated the law by not compensating Plaintiffs for all hours they worked.  This was done both before Fresco by Scotto implemented a time-clock system in June 2011, and after Fresco by Scotto implemented a time-clock system which miscalculated the Plaintiffs' daily hours worked, leading Plaintiffs to be undercompensated.  Defendants systematically and intentionally failed to pay Plaintiffs for all hours they worked.

Plaintiffs are also entitled to recover for other violations of the FLSA and NYLL committed by Defendants. For a period of time, Plaintiffs were not paid overtime when they worked above 40 hours is a week. Similarly, Plaintiffs were not paid spread of hours pay when they worked over ten hours in a day, as required by the NYLL. Defendants further violated the NYLL by requiring Plaintiffs to purchase uniforms and not reimbursing Plaintiffs.

These violations were willful, and not made in good faith, entitling Plaintiffs to liquidated damages under both the FLSA and NYLL, and a statute of limitations of three years under the FLSA.

The evidence at trial will show that Defendants Starjem Restaurant Corp. Anthony Scotto, Jr., and Marion Scotto are jointly and severally liable for the violations of the FLSA and NYLL.

## **ARGUMENT**

### I. DEFENDANTS WERE REQUIRED TO PAY PLAINTIFFS AT THE MINIMUM WAGE RATE RATHER THAN AT THE LOWER TIP-CREDIT RATE

Both the FLSA and New York Labor Law require an employer to pay an employee a minimum wage. Both laws allow an employer to pay an employee at a lower "tip-credit" rate if certain conditions are met.

#### A. FLSA Tip-Credit Requirements

Under the FLSA, an employer may pay food service employees at a lower tip credit rate if the employee regularly receives more than $30 a month in tips. 29 U.S.C. §§ 203 (m), 203(t). Such employees may be paid at a rate of $2.13 per hour, provided that when their tips are accounted for, they receive the minimum wage of $7.25 per hour. 29 U.S.C. §203(m); *Chhab v.*

*Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 135926, *9 n. 4, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013).

"An employer may not avail itself of the tip credit if it requires employees to share their tips with employees who do not regularly and customarily receive tips." *Fonseca v. Dircksen & Talleyrand Inc.*, 2014 U.S. Dist. LEXIS 52744, *5, 2014 WL 1487279 (S.D.N.Y. April 10, 2014) (citing 29 U.S.C. §203(m)).  Therefore, "an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011); *see also Chhab*, 2013 U.S. Dist. LEXIS 135926, at *17 ("The inclusion of an employee who does not customarily and regularly receive tips will invalidate the tip credit applied to participating employees' wages").

In determining whether an employee is one who customarily and regularly receives tips, the court must determine "whether the employee's job is historically a tipped occupation and whether he has more than 'de minimis' interaction with customers as a part of his employment." *Chhab*, 2013 U.S. Dist. LEXIS 135926, at *18.  Courts in this district have generally drawn a line between back-of-the-house restaurant staff who cannot participate in tip pools because they do not interact with customers, and employees who provide direct service to customers such as servers, hosts, and bussers. *Id.*, 2013 U.S. Dist. LEXIS 135926, at *18-19.

Here, the trial testimony will establish that employees who were assigned to the stocker position were tip-ineligible because they did not engage in customer service.  Rather, their primary responsibilities were to clean, polish, and stock flatware and glasses at the stocker station.  *Cf. id.*, 2013 U.S. Dist. LEXIS 135926, at *40 (silverware polishers and dishwashers tip-ineligible because did not engage in customer service).  Nevertheless these stockers participated

in the tip-pool.  Additionally, Fresco by Scotto included in the tip pool an employee assigned to work as a coffee preparer. During many lunch shifts the coffee preparer's sole role was only to prepare coffee, tea, and iced tea; he did not serve customers.  Fresco by Scotto also included in the tip pool bar backs whose only roles were to wash glasses, clean bottles, clean mirrors, and sweep the floor.   Similarly, Fresco by Scotto sometimes assigned a food runner to act as an expediter, whose functions was to coordinate food orders between the floor and the kitchen.  At times the expediters participated in the tip-pool, though they were ineligible to do so because they did not participate in customer service.  The participation of stockers, expediters, coffee guys, and bar backs in the tip pool prevent Fresco by Scotto from lawfully paying participants in the tip pool at a lower tip-credit rate.  Additionally, the stockers, expediters coffee guys, and bar back were themselves not eligible to be paid at the lower tip-credit rate.

Fresco by Scotto also was not permitted to pay Plaintiffs at the tip-credit rate because managers regularly participated in the tip pool.  To determine whether a tip pool participant is a manager under the FLSA, courts consider multiple factors, including "[1] [the] authority to suspend or terminate employees . . . ; (2) supervision of the wait staff and [making] hiring decisions; (3) [taking] responsibility for the restaurant's budget, including analyzing payroll and food costs; and (4) receipt of a salary . . . regardless of the number of hours . . .worked." *Widjaja v. Kang Yue USA Corp.*, 2011 U.S. Dist. LEXIS 109007, *15-16, 2011 WL 4460642 (E.D.N.Y. Sept. 26, 2011); *see also Gillian v. Starjem Rest. Corp.,* 2011 U.S. Dist. LEXIS 115833, *11-12, 2011 WL 4639842 (S.D.N.Y. Oct. 4, 2011) (courts consider whether individual "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records").

4

Here, the evidence will establish that Brent Drill and Attillio Vosilla were managers of Fresco by Scotto and participated in the tip pool.  Therefore, the Plaintiffs could not be paid at the tip-credit rate under the FLSA.

The FLSA also includes strict notice requirements before an employee can be paid at the tip-credit rate.  Proper notice requires "at the very least[,] notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287-288 (S.D.N.Y. 2011) (quoting *Martin v. Tango's Rest., Inc.,* 969 F.2d 1319, 1322 (1st Cir. 1992)).   Before using the tip credit, an employer must inform the employee of (1) the amount of cash wage the employer is paying the employee, (2) the amount they claim as a tip credit, (3) that the tip credit cannot exceed the amount if tips actually received by the employee, (4) the tips received by the employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) that the tip credit will not apply to a tipped employee unless he she has been informed of these tip credit provisions.  U.S. Department of Labor, Wage and Hour Division Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. July 2013) ("DOL Fact Sheet #15"), available at http://www.dol.gov/whd/regs/compliance/whdfs15.pdf.  *See also* 29 C.F.R. §§531.50, *et seq.*

The evidence will show that Plaintiffs were not provided adequate notice until approximately July 2012 that they would be paid at the tip-credit rate.  Plaintiffs were not provided any notice of Defendants' use of the tip credit until approximately March 2011, when Plaintiff were directed to sign wage notices.  However, these notices were only in English, and Plaintiffs' primary language is Spanish.  It was not until July 2012 that Defendants had Plaintiffs sign wage notices that were both in English and Spanish.

Additionally, when an employee performs both tipped and non-tipped work, Department of Labor regulations "permit the employer to utilize the tip credit only for hours spent by the employee in the tipped occupation." *Chhab*, 2013 U.S. Dist. LEXIS 135926, at *9 (citing 29 C.F.R. §531.51).   Furthermore, the Department of Labor has issued an opinion that "tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Id.*, 2013 U.S. Dist. LEXIS 135926, at *10-11 (citing U.S. Department of Labor, Wage and Hour Division Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Mar. 2011) ("DOL Fact Sheet #15"), available at http://www.dol.gov/whd/regs/compliance/whdfsl5.pdf).   The evidence will show that when Plaintiffs worked as stockers, coffee preparers, bar backs, or expediters, they spent over 20 percent of their time doing non-tipped work, and could not be paid at the tip-credit rate.   The evidence at trial will also show that all busser and food runners performed non-tipped work for at least 20 percent of their shifts, and were unlawfully paid at the tip-credit rate for all the hours they worked.

B.  New York State Law Tip-Credit Requirement

New York law also allows an employer to pay an employee at a tip-credit rate.   The employee must receive a wage of at least $5.00 per hour, and the total of tips and wages must equal or exceed $8.00 per hour.  12 NYCRR §146-1.3(b).

The employer must provide the employee written notice of the employee's hourly rate, overtime rate, and tip credit.  12 NYCRR §146-2.2.  The notice must be in both English and in any other language spoken by the employee as his primary language.  12 NYCRR §146-2.2(a). If an employee is not notified as required by 12 N.Y.C.R.R. §146-2.2, the employer is not

allowed to pay employees at the lower tip credit rate.  The primary language of each of the Plaintiffs in this action is Spanish.  Plaintiffs were provided notices in English only until approximately late July 2012.  Accordingly, until they were provided with notices in English and Spanish in late July 2012, Plaintiffs did not receive notice that would allow Fresco by Scotto to pay them at the lower tip credit rate.

Under the NYLL, a restaurant employee is not a "food service worker" and may not be paid at the lower tip credit rate if the employee is assigned to do work for which tips are not received for 2 hours or more or for more than 20 percent of her shift, whichever is less.  12 NYCRR §146-3.4; *see also* 12 NYCRR §146-2.9.  The evidence will show that Plaintiffs spent more than 20% of their workday doing work for which tips are not received.  This was especially the case when they were assigned to work as stockers, coffee guys, bar backs, and expediters, and spent all or nearly all of their time doing work for which tips are not received.

The NYLL, like the FLSA, also prohibits tipped employees to be required to share tips with non-service staff, and with managers.  NYLL §196-d.  Courts in this Circuit have repeatedly held that where an employer required tipped employees to share tips with non-service staff and with managers, the tipped employees are entitled to both the difference between the full minimum wage and the tipped minimum wage, and the misappropriated tips.  *See*, *e.g.*, *Copantitla*, 788 F. Supp. 2d at 290 (S.D.N.Y. 2011) ("defendants' violation of N.Y. Lab. Law §196-d itself constitutes an independent and sufficient reason to find that defendants are not entitled to a tip credit"); *Hai Ming Lu v. Jing Fong Restaurant, Inc.*, 503 F. Supp. 2d 706, 711

(S.D.N.Y. 2007) ("this separate violation of §196-d would render [employer] ineligible to receive a tip credit under New York law").[1]

Prior to January 1, 2011, the tip credit eligibility of Plaintiffs was governed by 12 N.Y.C.R.R. §137.  Under those regulations, in order to pay employees at a tip-credit rate, employer were required to (1) "furnish to each employee a statement with every payment of wages listing ... allowances ... claimed as part of the minimum wage...," and (2) "maintain and preserve for not less than six years weekly payroll records which shall show for each employee... allowances ... claimed as part of the minimum wage...."  *Copantitla*, 788 F.Supp.2d at 290 (quoting *Padilla v. Manlapaz*, 643 F.Supp.2d 302, 309 (E.D.N.Y.2009)).

Here, as in *Copantitla*, "although defendants provided plaintiffs with a pay statement listing hourly pay, deductions, and tip income, the pay statements do not show 'allowances... claimed as part of the minimum wage.'" *Id.*  The pay statements the Plaintiffs received "show only that plaintiffs earned tip-related income; they do not record that any of the tip income was claimed as part of the minimum wage." *Id.*; *see* P Exs. 82-87)  Accordingly, defendants could not take a tip allowance.


## II.  DEFENDANTS MISAPPROPRIATED PLAINTIFFS' TIPS IN VIOLATION OF NYLL §196-d

Defendants unlawfully misappropriated tips from the Plaintiffs by requiring them to share portions of their tips with managers and with non-service employees such as stockers, coffee preparers, bar backs, and expediters.

Section 196-d of the New York Labor Law provides:

---

[1] We are aware that this Court reached an opposite conclusion in *Schear v. Food Scope Am., Inc.*, 2014 U.S. Dist. LEXIS 3454, *51, 2014 WL 123305 (S.D.N.Y. Jan. 10, 2014).  We respectfully disagree and ask the Court to reconsider.

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. . . . Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

The New York Court of Appeals has defined "similar employee" to mean employees who are "ordinarily engaged in personal customer service." *Barenboim v. Starbuck Corp.*, 21 N.Y.2d 460, 471-72 (2013); *see also Shahirar*, 659 F.3d at 240 (Section 196-d prohibits employers from requiring employees to share tips with non-service employees and managers).

The testimony at trial will show that stockers, coffee preparers (during shifts when the coffee helper brought drinks to customers), bar backs, and expediters were not ordinarily engaged in personal customer service.

The testimony at trial will also show that Brent Drill and Attilio Vosilla received tips from the tip pool while they were managers of Fresco by Scotto. This is prohibited. An individual is not a "similar employee" to waiters and bussers if the individual exercises "meaningful or significant authority or control over subordinates." *Barenboim*, 21 N.Y.2d at 473. The New York Court of Appeals further explained:

> Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation. In other words . . . the power to hire and fire is not the exclusive test . . . . Meaningful authority, not final authority, should be the standard.

9

*Id.* Therefore, "an employee granted meaningful authority or control over subordinates can no[t] be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool." *Id.*

The trial testimony will establish that Drill and Vosilla both had meaningful and significant authority over employees, including Plaintiffs. They had, among other things, authority to hire, fire, and discipline employees, set employee schedules, and oversee employee performance. This authority forbids them from taking part in the tip pool.

Defendants, we expect, will argue that Drill and Vosilla were eligible to participate in the tip pool because they were engaged in customer service. However, even though Drill and Vosilla did participate in some customer service, the fact that they also had meaningful authority over bussers, stockers, food runners, and other service employees makes them ineligible to participate in a tip pool.

A very recent decision by District Judge Crotty is directly on point. In *Encalada v. SDNY 19 Mad Park*, Index No. 13-cv-1926 (PAC) (S.D.N.Y. Nov. 6, 2014),[2] Judge Crotty determined after a bench trial that a maître d' named Mr. Lombardozzi possessed the meaningful authority that rendered him ineligible to participate in a tip pool. Mr. Lombardozzi frequently interviewed potential hires, disciplined employees, and created the initial employees' schedule each week. *Id.* at 9. Judge Crotty held that even if other individuals held "ultimate authority" over those actions, and even if 90 percent of Mr. Lombardozzi's actions related to customer service, the remaining 10 percent constitutes 'meaningful authority' under *Starbucks*." *Id.* at 9-10 Therefore, Mr. Lombardozzi was not allowed to participate in the tip pool. *Id.*

Likewise, Mr. Drill and Mr. Vosilla had meaningful authority over employees. Even if they spent part of their work engaged in customer service, and if Anthony Scotto maintained

---

[2] A copy of the transcript containing the decision after trial in this action is annexed as Exhibit A.

10

ultimate authority over Fresco's employees, the authority Drill and Vosila exercised meaningful authority over Fresco's employees.  Defendants are liable to Plaintiffs under Section 196-d.

III.   **PLAINTIFFS WERE NOT COMPENSATED FOR ALL HOURS WORKED, IN VIOLATION OF THE MINIMUM WAGE AND OVERTIME PROVSIONS OF THE FLSA AND NYLL**

Under both the FLSA and NYLL, an employee must be paid a minimum wage for all hours worked.  29 U.S.C. §206; N.Y. Lab. Law §652.  Also under both the FLSA and NYLL, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek.  29 U.S.C. § 207(2)(C); 12 NYCRR 146-1.4; 12 NYCRR §137-1.3.

The evidence will show that Defendants violated these minimum wage and overtime provisions because they undercounted the number of hours Plaintiffs worked, resulting in Plaintiffs being paid at less than minimum wage, and not receiving overtime pay for all hours worked above 40 in a week.  This occurred both before June 2011, when the Defendants did not track the number of hours Plaintiffs worked, and after June 2011, when the Defendants implemented a time clock system that automatically subtracted approximately 19 minutes of each shift Plaintiffs worked.

A.  Before June 2011

The evidence at trial will show that before June 2011, Defendants did not keep track of the actual number of hours worked by Plaintiffs.  Instead, Defendants paid Plaintiffs by a "shift pay" method, whereby the Plaintiffs were paid the same amount per shift, regardless of the number of hours they actually worked.  The Plaintiffs regularly worked more hours that the Defendants accounted for in their shift pay.  As a result, Plaintiffs were not paid at the minimum

wage rate, because for some hours they were not paid at all.  This violation is independent of the issue of whether the Plaintiffs could be paid at the tip-credit rate.  Even if it were proper to pay Plaintiffs at the tip-credit rate (and Plaintiffs contend it was not, *supra*), Defendants violated the minimum wage laws by failing to properly account for and pay all hours Plaintiffs worked.

Additionally, Plaintiffs were never, or almost never, paid at the overtime premium for hours they worked in excess of 40 hours per week, though Plaintiffs frequently worked more than 40 hours in a week.

B.  After June 2011

On or about June 13, 2011, Fresco by Scotto implemented a time clock system, whereby Plaintiffs were required to enter their start time and stop time in a computer when they began and finished each shift.  The time clock system would calculate a total number of hours each Plaintiff worked on each shift.  However, the total was not the full number of hours between a Plaintiff's start time and end time.  Rather, Fresco by Scotto intentionally manipulated the time clock system so that the system would calculate the total hours worked as approximately nineteen minutes less than the time between an employee's recorded start time and end time.  (P. Exs. 13-24, 78)

As one typical example, on July 17, 2012, Pablo Alvarado was recorded as "In" at 10:01 AM and "Out" at 2:35 PM.  His total time worked should have been recorded as 4 hours and 34 minutes, or 4.56 hours.  Instead, his "Total" was recorded as 4.25 hours, or 4 hours and 15 minutes.  Later the same day, he was recorded as "In" at 4:10 PM and "Out" at 10:16 PM.  His total time should have been recorded as 6 hours and 6 minutes, or 6.10 hours.  Instead, the "Total" for that shift is 5.78 hours, or 5 hours and 47 minutes.  (P. Ex. 13)

This undercounting of the number of hours worked resulted in Plaintiffs being paid less than they were due under the minimum wage laws.   Independent of the issue of whether Plaintiffs could be paid the tip-credit, Plaintiffs were not paid at the minimum wage rate because Fresco by Scotto did not account for all the hours they worked.

In some cases, this also caused Plaintiffs not to receive overtime pay for hours worked above 40, since Plaintiffs worked above 40 hours in a week but their total hours were undercounted so that they worked below 40 hours.   For example, in the week from December 10 through December 15, Plaintiff Nahun Flores's hours worked were calculated as 38.77 hours. However, his time was undercalculated by approximately 2 hours and 13 minutes (7 shifts of 19 minutes undercounted each).   Flores actually worked approximately 41 hours that week, yet he did not receive any overtime pay because his hours were undercounted.   (P. Exs. 12, 17)

Defendants apparently contend that this deduction of 19 minutes was to account for the time Plaintiffs spent each shift eating at a staff meal, called the family meal.   This contrived explanation fails as both an evidentiary and legal matter.   There is no evidence that Defendants implemented this 19 minute undercounting to account for the family meal.   When questioned about the 19 minute undercounting at his deposition, Anthony Scotto claimed to have no knowledge of the undercounting, or any possible reason for it.   If Anthony Scotto gives contrary testimony at trial, it will not be credible.   Defendants have not identified any document which would evidence that the reason for the 19 minute undercounting is to take the family meal, when Plaintiffs purportedly are not working, into account.   Plaintiffs' unequivocal testimony is that they were never informed that the time between their clock in and clock out times would be reduced by 19 minutes per shift, to account for a purportedly non-compensable family meal time. (Salinas Dec. ¶42; Rodriguez Dec. ¶41; Cedeno Dec. ¶37; Urgiles Dec. ¶43; Lugo Dec. ¶39;

Caravantes Dec. ¶ ; Amezquita Dec. ¶32; Alvarado Dec. ¶42; Roballo Dec. ¶ 42;  Flores Dec. ¶44; Francisco-Lopez Dec. ¶42; Leon Dec. ¶42)  Fresco's employee handbooks and wage notices said nothing about this time being deducted from employees' total hours.  The claim that the time was deducted to account for the family meal is simply a concocted explanation for litigation.

Even if the 19 minute deduction was in fact done to account for time employees spent at the family meal, such time is compensable work under the FLSA, and the time deduction is improper.  The regulation concerning time spent off duty and whether it is compensable provide:

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

29 C.F.R. §785.16(a).  More specifically, a federal regulation addresses whether meal time compensable, providing:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. §785.19(a).

Plaintiffs did not have adequate time and opportunity during the family meal to use the time for their own purposes.  They were not permitted to leave the restaurant during that time.

14

(Flores Dec. ¶27)  Nor were they completely relieved from their duty; for example, if a manager determined they had not completed their side work, they could be required to interrupt their meal and complete their jobs.  Therefore, the family meal time is compensable work time.  *See He v. Home on 8th Corp.*, 2014 U.S. Dist. LEXIS 114605, *27-28, 2014 WL 3974670 (S.D.N.Y. August 13, 2014) (meal breaks which did not give workers sufficient time to use effectively for own purposes was compensable time).

Additionally, Plaintiffs Leon, Urgiles, and Roballo testify that they were directed by Brent Drill not to punch in for several shifts they worked, specifically in December when the restaurant was busy.  (Urgiles Dec. ¶45; Roballo Dec. ¶44; Leon Dec. ¶43)  These Plaintiffs were entirely unpaid for these shifts, in clear violation of the FLSA and NYLL.

## IV. PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR UNIFORM AND EQUIPMENT COSTS

Throughout their employment at Fresco by Scotto, Plaintiffs were required to purchase specific clothing that they were required to wear at work.  Fresco by Scotto has a strict dress code which required Plaintiffs to wear specific shirts and ties that they were required to purchase from Fresco by Scotto itself.  Plaintiffs paid for these items in cash, and were not reimbursed for them.  Plaintiffs also were required to wear specific clothing — black dress pants, a black belt, and black dress shoes — which they had to purchase themselves.  Defendants violated both the FLSA and NYLL by requiring Plaintiffs to purchase items from Fresco by Scotto for use in their jobs.

Federal law requires that wages be paid "free and clear" of all "'kick-backs' directly or indirectly to the employer or to another person for the employer's benefit."  29 C.F.R. §531.35.  This prohibition includes any "kick-back," whether or not in cash:

15

> For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

*Id.*  Here, Plaintiffs were required by Fresco to purchase clothing — shirts, ties, and collar stays — directly from Fresco.  They also were required to purchase crumbers, used to clean tables of crumbs, directly from Fresco.  Plaintiffs are entitled to recover these expenses under the FLSA.  *See, e.g., He*, 2014 U.S. Dist. LEXIS 114605, at *28-*30.

Plaintiffs are also entitled to recover these expenses under the NYLL and regulations.  12 NYCRR §137-1.8, in effect until January 1, 2011, provided that "[w]here an employee purchases a required uniform he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages."  Likewise, 12 NYCRR §146-1.8, in effect starting January 1, 2011, provides that "[w]hen an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday."  A "required uniform" is "that clothing required to be worn while working at the request of an employer . . ., *except* clothing that may be work as part of any employee's ordinary wardrobe."  12 NYCRR §146-3.10(a).  "Ordinary wardrobe" means "ordinary basic street clothing selected by the employee-where the employer permits variations in details of dress."  12 NYCRR §146-3.10(b).

The evidence at trial will show that the Plaintiffs were (A) required to purchase specific shirts and ties from Fresco with their own funds, to wear on the job, and (B) required to obtain on their own specific types of pants and footwear, which were not part of Plaintiffs' ordinary

16

wardrobe, and which Plaintiffs were not reimbursed for.  Plaintiffs are entitled to recover these expenses.

V.  **DEFENDANTS VIOLATED THE WAGE NOTICE AND WAGE STATEMENT PROVISIONS OF THE NYLL**

Under the NYLL, employers must provide employees with wage and hour notices. NYLL §195(1)(a).  Specifically, the notices must inform the employee, in both English and the employee's primary language, of the rate of pay.  Employees must be provided such notices at the time of hiring and on or before February first of each subsequent year of employment.  *Id.* An employee who does not receive such notices can recover damages of $50 per week, up to a statutory maximum of $2,500.  NYLL §198(1-b).  These requirements went into effect on April 9, 2011.

Similarly, employers are also required to provide wage statements with each payment of wages, which must include, among other things, the rate of pay and basis thereof, and "allowances, if any, claimed as part of the minimum wage."  NYLL §195(3).  An employee who does not receive such statements can recover $100 per week of violation, up to a maximum of $2,500.  NYLL §198(1-d).

Plaintiffs are entitled to damages for violation of the notice provision.  Plaintiffs were directed to sign notices in April 2011 and February 2012.  However, the notices were defective. Plaintiffs' primary language is Spanish, as Defendants knew.  However, Defendants did not provide Plaintiffs notices in both English and Spanish until July 2012.  (P. Exs. 30, 32, 38, 40, 44, 46, 50, 54, 58, 61, 65, 68)  Moreover, at all times, Plaintiffs were not given copies of the notices to keep.  They only signed the notices and returned them to Fresco, but did not receive copies for themselves.  Additionally, the notices were defective because they falsely stated that

Plaintiffs would be paid at the regular rate of $5.00 per hour.  In fact, Plaintiffs were paid at a lower rate because Fresco by Scotto automatically and without notice deducted nineteen minutes from Plaintiffs' shifts, resulting in Plaintiffs being paid at a lower rate.  Accordingly, Plaintiffs should be awarded damages for violations of the wage notice provision  *See Cuzco v. F & J Steaks 37th St, LLC*, 2014 U.S. Dist. LEXIS 72984, *10-*12 (S.D.N.Y. May 28, 2014) (existing employees have private right of action for failure to provide wage notices annually).

Plaintiffs also have claims for violation of the wage statement provisions.  Though Plaintiffs were provided with wage statements, they were not accurate, because, as stated above, Plaintiffs were actually paid below $5.00 per hour, since they were not compensated for all hours worked.  Moreover, while the statements Plaintiffs received did identify the tips Plaintiffs received each week, the tips were not identified as "allowances . . . claimed as part of the minimum wage."  Rather, they were simply listed as "Other."  (P. Exs. 82-87)  Therefore, Defendants violated the wage statement provisions of the NYLL.  *See Copantitla*, 788 F.Supp.2d at 290 (wage statements that list tip income but do not show that the tip income was an allowance claimed as part of minimum wage do not satisfy employer's obligation to provide wage statement).

## VI. MARION SCOTTO AND ANTHONY SCOTTO, JR. WERE EMPLOYERS OF PLAINTIFFS

Both Marion Scotto and Anthony Scotto, Jr. are, or were, employers of the Plaintiffs, and are individually liable to Plaintiffs for any violations of the FLSA and NYLL.

Under the FLSA, employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. §203(d).  "The Supreme Court has recognized that `broad coverage [under the FLSA] is essential to accomplish the [statute's] goal of outlawing from interstate commerce goods produced under conditions that fall below

minimum standards of decency." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citing *Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)).  Accordingly, the Supreme Court has "consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction."  *Id.*  The determination of whether an employer-employee relationship exists under FLSA is based on an "economic reality" test taking account of the totality of the circumstances.  *Id.* at 104.

In *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), the Second Circuit identified four factors for determining the `economic reality' of a putative employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d, 132, 142 (2d Cir. 2008) (quoting *Carter*, 735 F.2d at 12).  These factors do not constitute "a rigid rule for the identification of a FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 143.

In addition to these four factors, courts must also consider "other factors bearing upon the overarching concern of whether the alleged employer possessed the power to control the workers in question."  *Irizarry* 722 F.3d at 105 (citing *RSR Sec. Servs.*, 172 F.3d at 139).  Most importantly, the court must consider whether the individual possessed "operational control."  *Id.* at 109.  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.

There is no dispute that Anthony Scotto was responsible for the operations of Fresco by Scotto, had the power to hire and fire employees, supervised and controlled the work schedules and conditions of employment, determined the rate and method of pay, and maintained employment records.  We understand Defendants do not dispute that Anthony Scotto was an individual employer.

Marion Scotto also is an individual employer under the FLSA.  The testimony and evidence at trial will prove that Marion Scotto, among other things, (1) frequently is present at potential employee interviews, such as for hostesses, (2) gives directions to employees, including the Plaintiffs and other bussers, on a regular basis, (3) was physically at Fresco by Scotto most days it is open, (4) is responsible for parties at Fresco by Scotto and helps decided which employees will staff them, (5) is involved in deciding when and whether Fresco by Scotto will hire additional employees, (6) was involved in drafting Fresco by Scotto's employee policy guide, (7) signs employees' checks, (8) is viewed by employees as a boss, (9) is described on Fresco by Scotto's website as "[k]nown affectionately as 'The Boss,'" and "runs front-of-the-house duties in the restaurant," and (10) is the president, chief executive officer, and majority shareholder of Starjem Restaurant Corp., the corporation that operates Fresco by Scotto.

These factors taken together show that the economic reality is that Marion Scotto is an individual employer under the FLSA.  She was deeply involved in the business and its operations.  She was actually involved in the hiring and firing of employees, and had the authority to hire and fire employees.  She supervised or controlled employee schedules, in that she would assign employees to work at parties, and gave employees directions to perform specific tasks.  She determined the rate and method of payment, as she personally signed employees' paychecks. *See Irizarry*, 722 F.3d at 115 (fact that individual's signature appeared

on paychecks is important factor in determining he was an employer).  She also, from a practical standpoint as the majority shareholder, controls the company financially.  *Id.*

While the question of whether the same test for employer status applies under the NYLL was left open by the 2nd Circuit in *Irizarry*, *id.* at 117-118, "district courts in this Circuit have consistently interpreted the definition of `employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Ho v. Sim Enters*., 2014 U.S. Dist. LEXIS 66408, *26 (S.D.N.Y. May 14, 2014); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 940 (S.D.N.Y. 2013).

## VII.   PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER BOTH FEDERAL AND NEW YORK LAW, AND A THREE YEAR STATUTE OF LIMIATIONS UNDER THE FLSA

### A.  Liquidated Damages

Plaintiff are entitled to recover liquidated damages under both federal and New York law. Both the FLSA and New York Labor Law provide for an award of liquidated damages unless the Defendants prove their violations were made in good faith.  Because Defendants will not be able to prove their violations were in good faith, Plaintiffs are entitled to liquidated damages.

Under the FLSA, once liability is established the employee is entitled to recover all unpaid minimum and overtime wages, as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  *McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 55425, *12, 2012 WL 1358739 (S.D.N.Y. April 19, 2012) (quoting *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). The employer may escape liability for liquidated damages, if it can demonstrate that "it acted in subjective 'good faith' with objectively

21

'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132, 150 (2d Cir. 2008).  The employer must make establish its subject good faith and objective reasonableness by "plain and substantial evidence." *Solis v. Cindy's Total Care, Inc*., 2012 U.S. Dist. LEXIS 1808, *74, 2012 WL 28141 (S.D.N.Y. Jan. 5, 2012) (quoting *Moon v. Kwon*, 248 F.Supp.2d 201, 234 (S.D.N.Y. 2002).  "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."  *McLean*, 2012 U.S. Dist. LEXIS 55425, *13 (quoting *Herman*, 172 F.3d at 142).  "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Id.* (quoting *Barfield*, 537 F.3d at 150).

Similarly, under the New York Labor Law, an employee is entitled to recover liquidated damages unless the employer proves a good faith basis for having failed to pay the required wages.  N.Y.L.L. §663(1); *Hart*, 967 F.Supp.2d at 936-37.  For the period prior to November 24, 2009, an employee can recover liquidated damages if he proves that the Defendants' violations were willful.  *Id.*  For periods prior to April 9, 2011 liquidated damages under the NYLL are awarded at 25%; from April 9, 2011 forward, 100%. N.Y.L.L. §663(1).

A plaintiff may recover both FLSA and NYLL liquidated damages for overlapping periods of time.  *See, e.g.*, *Ho*, 2014 U.S. Dist. LEXIS 66408 at *47-*51 ("This Court adopts the rationale followed by the majority of district courts in this Circuit and concludes that plaintiffs may recover liquidated damages under both FLSA and the NYLL");  *Merino v. Beverage Plus Am. Corp.*, 2012 U.S. Dist. LEXIS 140679, *8, 2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012) ("Most courts in this Circuit hold that a plaintiff may recover both forms of liquidated damages because the FLSA's damages are meant to be compensatory, while the state damages are meant

22

to be punitive;" following majority of courts and awarding recovery of liquidated damages under both FLSA and NYLL); *McLean*, 2012 U.S. Dist. LEXIS 55425 at *25-26 ("FLSA liquidated damages and NYLL liquidated damages serve fundamentally different purposes, and the plaintiffs are entitled to both FLSA and NYLL liquidated damages for unpaid wage").

In order to establish a good faith defense, under both the FLSA and NYLL, "the employer bears the burden of establishing, by plain and substantial evidence, subject good faith and objective reasonableness . . . . The burden, under 29 U.S.C. §260, is a difficult one to meet, however, and double damages are the norm, single damages the exception." *Ho*, 2014 U.S. Dist. LEXIS 66408 at *45 (quoting *Reich*, 121 F.3d at 71).   The Defendants have not identified specific "active steps" they took to ascertain whether its practices were legal, though Anthony Scotto was repeatedly given the opportunity to do so at deposition.   Although Anthony Scotto stated at deposition that he consulted with counsel, Defendants have invoked the attorney-client privilege and refused to discuss the specific advice he received, and whether he followed the advice.   Defendants are, of course, entitled to invoke the attorney-client privilege, but absent a waiver of privilege they "cannot sustain a defense based on good faith reliance on the advice of counsel." *McLean*, 2012 U.S. Dist. LEXIS 55425 at *17.

B.   Statute of Limitations

The statute of limitations under the FLSA is two years from the filing the Complaint, except that an action based on a willful violation may be commenced within three years of the violation.   29 U.S.C. §255(a).   "An employer has willfully violated FLSA if it either acted knowingly or 'showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . '" *Ho*, 2014 U.S. Dist. LEXIS 66408, at *35 (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)).

Here, Defendants knew at the very least that there was a high likelihood that their pay practices violated the law.  Most of the claims that are the subject of this action were the basis for a previous lawsuit against Fresco by Scotto filed on August 12, 2010, in which Defendants' moved for and were denied summary judgment on several of these same claims, including the improper participation of managers and non-service employees in the tip pool.  *See Gillian v. Starjem Rest. Corp.,* 2011 U.S. Dist. LEXIS 11583, 2011 WL 4639842 (S.D.N.Y. Oct. 3, 2011). Defendants therefore were aware that they were likely violating the FLSA, and still continued the illegal practices.  Additionally, Fresco systematically paid employees for less than their full number of hours worked, both when it did not utilize a time clock, and after it instituted a time clock.

## CONCLUSION

Wherefore, it is respectfully requested that Plaintiffs be granted judgment against Defendants.

Dated:          November 11, 2014

By:  ____/s/ Joshua S. Androphy____
Joshua S. Androphy
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 2020
New York, New York 10022
(212) 317-1200
jandrophy@faillacelaw.com
*Attorneys for Plaintiffs*