UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENRIQUE SALINAS, ALFREDO RODRIGUEZ, ANGEL CEDENO, CHRISTIAN URGILES, FRANCISCO LUGO, JOSE AMEZQUITA, LUIS ROBALLO, MIGUEL CERVANTES, NAHUN FLORES, PABLO ALVARADO, PABLO FRANCISCO-LOPEZ, VALENTIN XOCHIPILTECATL, and VICENTE LEON, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>  -against-<br><br>STARJEM RESTAURANT CORP., (d/b/a FRESCO BY SCOTTO), MARION SCOTTO and ANTHONY SCOTTO,<br><br>    Defendant. | Index No. 13-cv-2992 (AT) |

## DEFENDANTS' PRETRIAL MEMORANDUM OF LAW

                         LITTLER MENDELSON, P.C.
                         Attorneys for Defendants
                         900 Third Avenue
                         New York, New York 10022-4834
                         (212) 583-9600

Of Counsel:
 Craig R. Benson, Esq.
 Naveen Kabir, Esq.

# TABLE OF CONTENTS

                                                                                                                   **PAGE**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.       PLAINTIFFS CANNOT PREVAIL ON THEIR TIP POOL CLAIMS ............................ 2

        A.       Plaintiff Did Not Share Any Tips with "Managers" ................................................ 4

                1.       Brent Drill and Attilio Vosilla Did Not Influence Hiring, Firing or Staffing Decisions at Fresco ....................................................................... 6

                2.       Anthony Scotto Has the Sole Authority to Control Employee Work Schedules and Conditions of Employment .................................................. 8

                3.       The Extensive Customer Service Responsibilities of Mr. Drill and Mr. Vosilla Outweighed their Limited Supervisory Roles ......................... 9

        B.       Plaintiffs Did Not Share Tips With Any "Non-Service" Employees .................. 10

II.      MARION SCOTTO IS NOT AN "EMPLOYER" ............................................................ 13

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**PAGE**

*Alvarado v. Five Towns Car Wash, Inc.*,
   2014 WL 4678258 (E.D.N.Y Sept. 19, 2014) ...............................................................5

*Arencibia v. 2401 Restaurant Corp.*,
   831 F. Supp. 2d 164 (D.D.C. 2011) ............................................................................7

*Barenboim v. Starbucks Corp.*,
   21 N.Y.3d 460, 927 N.Y.S.2d 191 (2013) ........................................................... passim

*Barenboim v. Starbucks Corp.*,
   549 F. App'x 1 (2d Cir. 2013) ..................................................................................6, 9

*Barenboim v. Starbucks Corp.*,
   698 F.3d 104 (2d Cir. 2012) .......................................................................................12

*Baystate Alternative Staffing, Inc. v. Herman*,
   163 F.3d 668 (1st Cir. 1998) ......................................................................................13

*Carter v. Dutchess v. Comm. Coll.*,
   735 F. 2d 8 (2d Cir. 1984) ...........................................................................4, 7, 8, 14

*Garcia v. La Revise Associates LLC*,
   2011 WL 135009 (S.D.N.Y. Jan. 13, 2011) .............................................4, 7, 9, 12

*Gillian v. Starjem Rest. Corp.*,
   2011 WL 4639842 (S.D.N.Y. Oct. 4, 2011) (Rakoff, J.) ...........................................12

*Giuffre v. Marys Lake Lodge, LLC*,
   2012 WL 4478806 (D. Colo. Sept. 28, 2012) ............................................................11

*Irizarry v. Catsimatidis*,
   722 F.3d 99 (2d Cir. 2013) ....................................................................................14, 15

*Kalloo v. Unlimited Mech. Co. of NY, Inc.*,
   977 F.Supp.2d 187 (E.D.N.Y. 2013) .........................................................................13

*MDO Dev. Corp. (t/a the Water Club) v. Comm'r. of Labor*,
   No. PR-01-054 ...........................................................................................................10

*Schear v. Food Scope Am., Inc.*,
   297 F.R.D. 114 (S.D.N.Y. 2014) (Torres, J.) ..........................................4, 10, 12, 13

# TABLE OF AUTHORITIES
(CONTINUED)

**PAGE**

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
 659 F.3d 234 (2d Cir. 2011)..................................................................................3, 4

**STATUTES**

29 U.S.C. § 203(m) ..............................................................................................3, 4, 10

**OTHER AUTHORITIES**

12 N.Y.C.R.R. § 146-2.14(e)........................................................................................6

12 N.Y.C.R.R. §§ 146-2.14(e)(3), (4), (6)..................................................................12

12 N.Y.C.R.R. § 146-2.14(e)(8) ...................................................................................5

12 N.Y.C.R.R. §§ 146-2.15(b).....................................................................................13

N.Y. DOL Op. RO-07-0128 (Feb. 20, 2008).............................................................10

N.Y. DOL Op. RO-08-0049 (Feb. 13, 2009)...............................................................5

N.Y. DOL Op. RO-09-0063 (Sept. 22, 2009)............................................................13

NYLL § 196-d................................................................................................... passim

**PRELIMINARY STATEMENT**

Plaintiffs assert a variety of wage-and-hour claims arising from their stints as bussers or food runners at Fresco by Scotto ("Fresco" or the "Restaurant"), a full-service Italian eatery in midtown Manhattan that has been owned and operated by the Scotto family since 1993. This action is the third (largely identical) lawsuit filed against Defendants challenging long-standing and perfectly lawful tip practices common to many fine-dining establishments in New York City. The waiters at Fresco pool their tips and distribute them to the front-of-house staff in accordance with a point-based system that mirrors the ascending rungs on the traditional busser-waiter-captain-maître d' service hierarchy. Although much of the legal and regulatory landscape governing tipped restaurant employees has been in flux since the first lawsuit was filed against Fresco in 2010, the core practices challenged by the Plaintiffs here have (mostly) stayed the same: only employees who participate in the service can participate in the tip pool, and only the Restaurant's general manager, Anthony Scotto, Jr. — who has never been involved in the tip pool — exerts control over the day-to-day management of Fresco in any meaningful sense. For many years, Fresco has provided a nice livelihood for its employees, including all of the Plaintiffs, and it has done so by operating in fair and lawful manner. As we will demonstrate at trial, the claims at issue herein—which unfortunately threaten the continued viability of the Restaurant—are baseless and simply cannot justify such a catastrophic result.

The evidence presented at trial will show that <u>none</u> of the 13 Plaintiffs — three of whom worked at Fresco for more than 14 years, and three more who still choose to work there today — were undercompensated by the Restaurant; if anything, they were most likely *over*paid. The crux of their case is their contention that they were improperly required to split tips with two individuals who participated in the entire service for every shift in which they participated in the tip pool, and also with other bussers or runners assigned to work in supposedly non-tipped

occupations (*i.e.*, one or more of their co-plaintiffs, as busser and runner assignments are rotated from shift to shift). In reality, all of the challenged participants shared the same primary duty as the rest of the front-of-house staff: providing prompt and attentive service to Fresco's guests. The success of each lunch and dinner service (and ergo, the size of the tip pool) has always been influenced by how well the bussers and runners work together and assist each other, as well as by how well they follow orders in connection with the service from waiters and captains or any other individuals working on the service floor. Service at a quality restaurant is like a machine with many moving parts. It involves a process designed to adapt to customer needs that are constantly changing throughout the course of each shift. Everyone who participates in the service, including all of the Plaintiffs, as well as the positions whose participation in the tip pool is being challenged, plays an important role and is jointly responsible for maintaining the level of personal service to patrons expected by Anthony Scotto — who is, was, and continues to be the only person at Fresco by Scotto capable of influencing the terms and conditions of Plaintiffs' employment or how much they were paid.

Because these are the primary legal issues before the Court, we focus on them below. Plaintiffs' other claims, including notice violations, uniform purchase, and the allegation that they spent more than twenty percent of their time doing non-tipped producing work, are factual in nature and addressed in the proposed findings of fact and conclusions of law.

## ARGUMENT

**I.   PLAINTIFFS CANNOT PREVAIL ON THEIR TIP POOL CLAIMS**

Plaintiffs allege a myriad of violations in an attempt to recoup the maximum amount recoverable under these statutes. First, they claim that they were improperly required to share tips with two service "managers" at the Restaurant — Brent Drill and Attilio Vosilla —who performed many of the functions traditionally associated with maître d's and whose supervisory

authority was strictly related to the service.  Second, they claim they were improperly required to share tips with non-service employees: the busser assigned to work in the "stocker" assignment, and also the runner misleadingly referred to as an "expediter."  Both of these assignments are integral members of the front-of-house service staff; indeed, many of the Plaintiffs worked (or still work) in the very roles they now claim should have never received tips.  Third, Plaintiffs also claim that the combination of their (inflated) estimates of their workdays and time spent on alleged non-tipped duties did not justify their treatment as tipped employees in the first place.  The evidence presented at trial will establish that Plaintiffs' claim of having performed little-to-no service at Fresco cannot be squared with the everyday business realities of the Restaurant, and if credited, works to defeat their claims for tips misdirected to any other individuals.

Under the Fair Labor Standards Act (FLSA), an employer may not pay an employee a tipped minimum wage if it permits the sharing of tips with (1) managers who do not participate in the service and are more akin to an Employer's agent or (2) non-service employees.  *See* 29 U.S.C. § 203(m); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011).  Under the New York Labor Law (NYLL), gratuities may not be distributed to an "employer or his agent" or with employees who do not constitute "a waiter … [or] busser or similar employee." NYLL § 196-d; *see also Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471-72, 927 N.Y.S.2d 191 (2013) (defining "similarly employee" as employees who are "ordinarily engaged in personal customer service.").  These standards are largely the same and are designed to insure that individuals who do not participate in the service, whether they are members of management or not, cannot take a portion of a tip pool away from those individuals who actually provide the service.  On the other hand, individuals who do participate in the service, and have limited managerial authority, can lawfully be included in a tip pool.

### A. Plaintiff Did Not Share Any Tips with "Managers"

Plaintiffs claim that Brent Drill improperly participated in the tip pool when he worked as a floor captain until January 2013 and that Attilio Vosilla, when working as a party captain, improperly received a portion of the mandatory service charge imposed on private parties until June 2011.[1] As will be demonstrated at trial, these claims must be rejected because both individuals play a vital role in the service and have limited managerial authority.

Both the FLSA and NYLL prohibit sharing tips with "managers," but only when they qualify as "employers" or agents thereof. *Shahriar*, 659 F.3d at 240 (2d Cir. 2011); *see also Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 131 (S.D.N.Y. 2014) (Torres, J.) (explaining that any differences between FLSA § 203(m) and NYLL § 196-(d) were immaterial for the purposes of determining legality of restaurant's tip pool). "To determine whether a person acts as an 'employer' under the FLSA and the NYLL so as to preclude tip sharing … courts [in the Second Circuit] apply the 'economic reality' test … to determine whether the alleged employer possessed the power to supervise and control the workers in question." *Garcia v. La Revise Associates LLC*, 2011 WL 135009, at *6 (S.D.N.Y. Jan. 13, 2011) (internal citations and quotations omitted). Under the FLSA, four factors are used to assess the totality of the circumstances in this regard; however, no one factor is dispositive: (1) the power to hire and fire, (2) supervising and controlling employee work schedules or conditions of employment, (3) determining employees' rate and method of pay and (4) maintaining employment records. *Id.* (*citing Carter v. Dutchess v. Comm. Coll.*, 735 F. 2d 8 (2d Cir. 1984)). These same factors bear on the "meaningful or significant authority or control over subordinates" standard articulated by

---

[1] Defendants dispute whether this service charge (*see* Fact Stip. No. 16, Joint Pretrial Order ("JPTO") § VII.B.) necessarily constituted a gratuity prior to January 1, 2011. In addition, Mr. Vosilla only participated when he worked as a party captain, not in his role as a maitre d'/service manager.

the Court of Appeals as the dividing line between service employees with limited supervisory authorities — like captains or individuals who exercise such authority during the service itself — and agents of the employer disqualified from receiving tips under NYLL § 196-d. *Barenboim*, 21 N.Y.3d at 473; *see also Alvarado v. Five Towns Car Wash, Inc.*, 2014 WL 4678258, at *3 (E.D.N.Y Sept. 19, 2014) (explaining that the "meaningful authority" standard "resembles the economic reality test [under the FLSA], hinging as it does on various factors indicating managerial power"). This is consistent with the New York State Department of Labor's ("NYSDOL") "long-standing" position "that employees who regularly provide direct service to patrons remain tip-pool eligible <u>even if</u> they exercise a limited degree of supervisory responsibility." *Barenboim*, 21 N.Y.3d at 472 (emphasis added); *see also* 12 N.Y.C.R.R. § 146-2.14(e)(8) (identifying "captains who provide direct food service to customers" as tip-eligible employees); Ex. 4 N.Y. DOL Op. RO-08-0049 (Feb. 13, 2009) ("[T]he sole criteria in determining whether [a supervisory] employee may be included" in a tip pool is "the extent of direct service provided to patrons," regardless of how that individual is compensated or classified); Ex. 1, NYSDOL Inter-Office Memorandum, Sept. 5, 1972 (explaining that under § 196-d, "[a]n employer's agent is a person who stands in the shoes of the employer, including a[] general manger of the business, but does not include a mere supervisory employee who does not have the authority to hire or fire.").[2] "Manifestly, captains enjoy some supervisory authority over other waitstaff, yet such responsibility does not, by itself, render them sufficiently dissimilar to waiters and bussers so as to preclude their participation in tip pools." *Barenboim*, 21 N.Y.3d at 472.

---

[2] The supplemental legal and regulatory authority cited herein are attached as exhibits to the accompanying Declaration of Craig R. Benson dated November 11, 2014.

Here, Plaintiffs contend that the supervisory duties performed by Brent Drill and Attilio Vosilla disqualified them from receiving tips. But the evidence presented at trial will establish that in both cases, their supervisory authority was strictly limited to directing Plaintiffs in providing "personal service to patrons." *Barenboim*, 21 N.Y.3d at 471. Moreover, providing service to Restaurant's customers was also their "principal" responsibility — regardless of whether they were serving as floor captain, party captain, or a maître-d'/service manager. *See Barenboim v. Starbucks Corp.*, 549 F. App'x 1, at *3 (2d Cir. 2013) (summary order) (affirming lower court's determination that shift supervisors who directed the work of baristas lacked the "substantial degree of managerial responsibility" required to outweigh their service duties under § 196-d); *see also* 12 N.Y.C.R.R. § 146-2.14(e) (tip pool eligibility "shall be based upon duties and not titles"). As will be demonstrated below, and at trial, because their supervisory authority involved the service, and did not include the authority to meaningfully effect the terms and conditions of employment of the Plaintiffs or anyone else at the Restaurant, they are eligible to participate in the tip pool.

### 1. Brent Drill and Attilio Vosilla Did Not Influence Hiring, Firing or Staffing Decisions at Fresco

This case does not involve a corporate setting or multiple facilities with a complex managerial hierarchy. It involves a single family-owned restaurant. One member of that family, Anthony Scotto Jr., is the General Manager and is thus in charge of every aspect of the running of the Restaurant. And Mr. Scotto takes this responsibility, especially the issue of who works in his Restaurant, very seriously. Every individual who has ever worked for the Restaurant knows that Mr. Scotto is the boss and the only one with any real say over things. There will be no genuine dispute that Anthony Scotto has authority over all hiring and firing decisions at Fresco. He personally interviews every front-of-house candidate, and made the decision to hire and/or

terminate every Plaintiff in this case. He also has the sole authority to make "decisions related to [Fresco's] staffing needs, including how to schedule shifts, how many staff members [are] needed each shift, and" whether to add or subtract more staff. *Garcia*, 2011 WL 135009, at *7 (testimony of general manager who closely supervised "the everyday business of the Restaurant" established that captains did not exercise sufficient control over hiring, firing or employee evaluation to disqualify them from participating in the tip pool).[3]

Neither Mr. Drill nor Mr. Vosilla have ever "participate[d]" in Fresco's hiring process in any "meaningful" way. *Barenboim*, 21 N.Y.3d at 473. While they may have passed resumes dropped off by potential candidates to Mr. Scotto or, in Mr. Vosilla's case, signed hiring paperwork after the decision to hire had already been made by Mr. Scotto, they played only an administrative role[4] On the rare occasions where Mr. Scotto asked them to participate, their role was limited strictly to that of an observer. Mr. Scotto, and only Mr. Scotto, made the final decision on whether or not to hire the candidate after personally observing the individual train for two or three shifts.

---

[3] To the extent Plaintiffs purport that, based on their interactions with Messrs. Drill and Vosilla, they believe they were hired, fired and/or disciplined by them, such self-serving testimony without any basis in "personal knowledge about the Restaurant's decision-making process" should not be credited. *Id.* (rejecting testimony from plaintiffs describing their interactions with captains as evidence of their "possession or exercise of management authority"); *see also Arencibia v. 2401 Restaurant Corp.*, 831 F. Supp. 2d 164, 176 (D.D.C. 2011) (rejecting plaintiffs' testimony as to their perception of maître d's hiring authority as admissible evidence based upon personal knowledge). No one but Mr. Scotto has ever had any meaningful discretion in this regard and there have been absolutely no exceptions.

[4] As explained in Section II, below, Mr. Scotto also maintained these and all the other employment records relevant to Plaintiffs' wage-and-hour claims, *i.e.*, the fourth *Carter* factor.

### 2. Anthony Scotto Has the Sole Authority to Control Employee Work Schedules and Conditions of Employment

Mr. Scotto is the only person at the Restaurant with the power to control how many shifts and what assignments the Plaintiffs worked.[5] Mr. Scotto determined the number of shifts. He usually limited the number of weekly shifts for bussers and runners to six (6) or seven (7) shifts per week, for the purpose of both limiting their workweek to fewer than 40 hours and also to assure equitable distribution of regular, late and on-call shifts among all of the bussers and runners each week. He regularly made adjustments to the schedule to add or subtract certain positions for certain shifts based on expected business volume in the Restaurant, and also decided which individuals should be rotated in the busser-stocker, busser-coffee station, bar back and/or runner-expediter assignments each shift, as needed. Not only did these decisions affect how much the Plaintiffs would earn in hourly wages each week, but they also influenced how much they might earn from the tip pool, depending on the point value associated with each assignment (or Mr. Scotto's decision to pull them from the tip pool altogether, and pay them additional wages via paycheck instead as he did with certain of the Plaintiffs when he needed them to work in the kitchen,).[6] In addition to the shift call times reflected on the employee schedules, Mr. Scotto also structures each shift to limit the amount of time spent working prior to the arrival of the customers, allow a full 30-minute break during the family meal period, and accommodate a pre-shift meeting with the service staff before the first customers are seated. At the beginning of each shift, depending on the number of reservations and how much business is anticipated, Mr. Scotto decides the number of sections to divide the dining room into and assigns

---

[5]   (It is expected that Plaintiffs will claim Mr. Vosilla's role in drafting the weekly schedule for Mr. Scotto's review is somehow indicative of managerial authority. In reality, this was yet another ministerial task delegated by Mr. Scotto, who had the sole authority to assign shifts to the Plaintiffs each week, as well approve requests for time off or swapping shifts.

[6]   As explained in Section II, below, Mr. Scotto sets the rates of pay for all employees at Fresco and also controls their method of pay, i.e., the third *Carter* factor.

the waiters and bussers to different sections and/or assignments. These are exactly the sort of "meaningful" decisions capable of "directly influencing the number and timing of hours worked by staff as well as their compensation" that represents the line between an individual with "substantial" "managerial responsibility" — *i.e.*, Mr. Scotto — and individuals with limited supervisory authority in connection with the service.— *i.e.*, Messrs. Vosilla and Drill. *Barenboim*, 21 N.Y.3d at 473; *see also Garcia*, 2011 WL 135009 at *7 (concluding captains lacked any power to influence distributions from tip pool where general manager made all staffing and scheduling decisions and tip pool points were adjusted based on whether individuals were sent home early based on staffing needs).

> 3. **The Extensive Customer Service Responsibilities of Mr. Drill and Mr. Vosilla Outweighed their Limited Supervisory Roles**

The evidence presented at trial will establish that Brent Drill and Attilio Vosilla spent the overwhelming majority of their time at Fresco performing the same service functions as the rest of the front-of-house wait staff, *i.e.*, greeting and interacting with guests; periodically checking in on their service; advising them on the menu and wine lists; serving food and beverages; opening and pouring wine; helping clear tables and replenish the stocking stations; and accommodating any guest requests. In other words, their primary duty has always been to provide personal service to Fresco's patrons. Any direction they provided to the Plaintiffs regarding performance of their busser or runner duties is the same "manifest" supervisory authority "captains enjoy … over other wait staff" that "does not, by itself, render them sufficiently dissimilar to waiters and bussers so as to preclude their participation in tip pools." *Barenboim*, 21 N.Y.3d at 473; *see also Barenboim*, 549 F. App'x 1 at *3 (shift supervisors who "spent the majority of their time performing the same duties" and provided feedback and coaching to baristas, advised managers about their performance, and verbally corrected their

mistakes had "limited" supervisory authority); *see also* Ex. 3, N.Y. DOL Op. RO-07-0128 (Feb. 20, 2008) (explaining that sommeliers who spent the majority of their time explaining wine menus, making suggestions to customers, and opening and pouring bottles "render[ed] numerous personal services to patrons" that made them a "similar employee" to a waiter for the purposes of NYLL § 196-d); Ex. 2, *MDO Dev. Corp. (t/a the Water Club) v. Comm'r. of Labor*, No. PR-01-054 ¶ 9.a. (Ind. Bd. of App. Apr. 30, 2003) ("Inherent in [the Director of Banquet Operations'] role as head of the service staff were supervisory duties that included reprimanding and controlling other employees" and finding no evidence that he had authority to hire or fire, set hours or methods of operation or set rates of pay so as to preclude his lawful participation in the tip pool).

Given the limited nature of their supervisory authority, and what will be shown to be their undisputed primary role in the service at Fresco, there is nothing improper about the inclusion of Mr. Vosilla and Mr. Drill in the tip pool.

### B. Plaintiffs Did Not Share Tips With Any "Non-Service" Employees

Perhaps recognizing the speciousness of their claims regarding Mr. Vosilla and Mr. Drill, Plaintiffs alternatively claim that two of their own positions somehow taint the tip pool. Plaintiffs do not appear to dispute that, as bussers and runners, their primary duty at Fresco was (or is) to provide direct personal service to Restaurant patrons. Rather, they contend that the busser assigned to the stocker assignment and the lead runner, who plays a more active role in getting food out of the kitchen during busy times, did not have "more than *de minimis* interaction with customers as a part of their employment and/or [were not] ordinarily engaged in personal customer service." *Schear*, 297 F.R.D. at 132 (citing 29 U.S.C. § 203(m); NYLL § 196-d). These claims are unfounded. The evidence presented at trial will establish that, as individuals

responsible for covering over 200 seats throughout the Restaurant, it would be impossible for either of the positions at issue to not meaningfully participate in the service.

The evidence will establish that the busser with the stocker assignment was constantly required to cycle throughout the Restaurant, during the service, to re-fill the stocking stations placed in different areas of the Restaurant. Like other runners and bussers going back and forth between the dining room and the kitchen, the busser-stocker also ran bread and appetizers throughout the restaurant, and trays of food upstairs for private parties, — in addition to performing his regular busser duties of clearing and re-setting service items between each course and seating. Similarly, the lead runner spends the overwhelming majority of the shift running food; he only helps the chef or sous-chef (*i.e.*, the true expediter, who "expedites" by calling out the orders printed on each ticket) coordinate orders to help maintain service demands during busy portions of the shift, but never loses his core function as a food runner. This is exactly the sort of "personal customer service" that makes front-of-house staff members eligible to receive tips. *See Giuffre v. Marys Lake Lodge, LLC*, 2012 WL 4478806, at *2 (D. Colo. Sept. 28, 2012) ( "expeditor" responsible for checking plates to match the tickets, organizing plates before delivering them to tables, exchanging food if a customer complains, and "assisting the wait staff in any other way necessary," was "very similar to [] a waiter," and eligible to participate in a tip pool).

The busser assigned to the bar back role was responsible for clearing and re-setting the tables at the bar and in the front of the Restaurant, and also assisted the bartender in re-stocking the bar with beverages and service items, in filling beverage orders, and also in delivering drinks to customers. The busser assigned to the coffee station is responsible for making coffee and tea drinks (e.g., coffee, cappuccino, iced tea, espresso) and delivering them to customers with

various accompaniments (i.e., sugar, cream, honey, lemon, etc.).  All of these duties make the bussers assigned to the bar back role and coffee station eligible to receive tips.  See *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 105 (2d Cir. 2012) (explaining that baristas "responsible for taking customers' orders and serving [] coffee- and tea-based drinks" occupy the main rung of the store's service hierarchy eligible to receive tips); *Garcia*, 2011 WL 135009, at *2, 7 (bartenders who "made and delivered drinks for patrons, including mixed drinks, coffee, tea, and wine" for customers seated at in the dining room and at the bar); see also  12 N.Y.C.R.R. §§ 146-2.14(e)(3), (4), (6) (listing "bus persons," bartenders and "barbacks" as tip-eligible occupations).

       We must also point out the inherent conflict in the Plaintiffs' position.  In this regard, we note that Plaintiffs' position is that they were improperly required to share tips with one another on any shift where one of them was assigned to work in the stocker assignment, or perform the lead runner/"expediter" role.  As this Court has noted, the Plaintiffs who are still working at Fresco "have an interest in their participation in the tip pool (when serving as stockers and expediters, respectively) being validated." *Schear*, 297 F.R.D. at 122 (citing *Gillian v. Starjem Rest. Corp.*, 2011 WL 4639842, at *6-7 (S.D.N.Y. Oct. 4, 2011) (Rakoff, J.)).  Indeed, bussers and runners can earn anywhere from $50 to $200  in tips for a single shift at Fresco.  By claiming that they are non-service employees (either some or all of the time) in an attempt to bolster their minimum wage claims, they are essentially sacrificing their claim for tips misdirected to *other*

individuals under NYLL § 196-d.[7] *See* 12 N.Y.C.R.R. §§ 146-2.15(b) ("[o]nly food service workers may receive distributions from [a] tip pool"), 146-3.4(b) (excluding employees who work for more than "2 hours or more or for more than 20 percent of [their] shift" from the definition of "food service worker"). Conflicts are abound. Plaintiffs cannot have it both ways; either they were eligible to receive tips or they were not. The evidence presented at trial will establish that they all played a vital role in the service and that they spent the overwhelming majority of their working time performing tip-producing duties.

## II.  MARION SCOTTO IS NOT AN "EMPLOYER"

Plaintiffs have also sued Mr. Scotto's mother, Marion Scotto, as an individual defendant with respect to the wage-and-hour claims in this litigation. Individual liability under the FLSA is premised upon "personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998).[8] The Second Circuit has opined that this requires "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to the plaintiff's employment . . . A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature of conditions

---

[7]  Indeed, the tip-pooling violations claimed by Plaintiffs do not even entitle them to minimum wage damages for the six-year limitations period at issue during the New York Labor Law. That is because "[u]nlike the FLSA, New York's Minimum Wage Act … does not prohibit employers from availing themselves of a tip credit" even where tip sharing practices are found to violate Section 196-d. *Schear*, 297 F.R.D. at 132 (explaining that "employers are not required, under the NYLL, to reimburse an employee for the difference between the minimum wage and the food service worker minimum wage"); Ex. 5 N.Y. DOL Op. RO-09-0063 (Sept. 22, 2009) (same); *see also* Ex. 6, Order of Labor Commissioner M. Patricia Smith on the Rep. & Recs. of 2009 Wage Board, Nov. 5, 2009 (declining to impose the "excessive" penalty of tip credit damages for violations of § 196-d).

[8]  Courts have applied the same "employer" standard for the purposes of determining individual liability under the FLSA and NYLL. *See Schear*, 297 F.R.D. at 134 (*citing Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F.Supp.2d 187, 200 (E.D.N.Y. 2013) (explaining that "any difference [between the FLSA and NYLL] would be immaterial to the facts of this case").

of the employees' employment . . . the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but-for causation." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109-110 (2d Cir. 2013). "The *Carter* factors [] provide guidancefor courts when an individual's actions rise to this level," *i.e.*, (1) the power to hire and fire, (2) supervising and controlling employee work schedules or conditions of employment, (3) determining employees' rate and method of pay and (4) maintaining employment records. *Id.* at 110.

Mrs. Scotto did not play any role at the Restaurant that would render her personally liable in this matter. Again, there can be no doubt that the only individual who wielded any meaningful influence over the terms of Plaintiffs' employment was Mr. Scotto, as he:

- (1) had the sole authority to hire and fire employees, and <u>did in fact</u> hire all (and fire some) of the Plaintiffs;

- (2) "supervised and controlled" <u>both</u> the employees' work schedules (*i.e.*, by setting the number of shifts, adding and subtracting the number of individuals in each position on the schedule, approving all time off requests, and designating particular assignments) <u>and</u> their conditions of employment (*i.e.*, by assigning Plaintiffs to specific sections or stations in the Restaurant at the beginning of each shift, and setting their job duties);

- (3) determined the rate and method of pay (*i.e.*, deciding whether Plaintiffs were paid a tipped minimum wage or "by the house," setting the number of hours paid per shift, deciding to pay wages via live paycheck each week); and

- (4) maintained all of Plaintiffs' employment records, including the records relevant to their wage-and-hour claims in this action.

The only evidence remotely tying Mrs. Scotto to Plaintiffs' employment is the fact that she was a partial owner of the Restaurant and, as a result, at times, was one of two signatories listed on their paychecks.  But a signature on paychecks "— like all factors — is not dispositive."  *Catsimatidis*, 722 F.3d at 115 (citation omitted).  Mrs. Scotto's role at the Restaurant is primarily customer-focused.  She often times sits at the host stand and greets guests.  This is hardly the kind of role that should subject her to personal liability.  Having played no part whatsoever in any of the decisions or practices that are at issue herein, she cannot be personally liable.

## CONCLUSION

For the reasons set forth above, Plaintiffs cannot establish that Defendants are liable for their tip pool claims, or that Marion Scotto may be liable in her individual capacity.

Date:  November 11, 2014
       New York, New York

Respectfully submitted,

/s/ Craig R. Benson
Craig R. Benson
Naveen Kabir
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

Attorneys for Defendants