UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

IVAN MARQUEZ, LUCIO MARTINEZ,      :
  AND CONCEPCION RAMIREZ           :
                                   :
                     Plaintiffs,   :
                                   :
        -against-                  :
                                   :
ERENLER, INC. (d/b/a AKDENIZ)      :
SULAYAM YENILER, and MURATH AKTAS  :
                                   :
                     Defendants.   X
------------------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/2014

1:12-cv-8580-GHW

FINDINGS OF FACT
AND CONCLUSIONS OF LAW

GREGORY H. WOODS, United States District Judge:

Plaintiffs Ivan Marquez, Lucio Martinez, and Concepcion Ramirez brought this action against their former employers for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 190 and 650 *et seq.* All of the plaintiffs worked at Akdeniz, a Turkish restaurant in midtown Manhattan. The plaintiffs were paid a flat amount of "house pay" ($30 or $50) for each day that they worked, and received tips. The plaintiffs brought this action in 2012, claiming that their employers did not provide them with the notice required to allow the restaurant to credit their tips against the minimum wages otherwise due to them. The plaintiffs also asserted that that they did a significant amount of non-tipped work for which a tip credit was not available. The plaintiffs asserted that they worked overtime for which they were not compensated. Finally, the plaintiffs asserted that their work days spanned more than ten hours a day, yet that they were never paid the "spread of hours" pay required by law.

The defendants told a very different story. The defendants asserted that they had provided the plaintiffs adequate notice, so that the tips plaintiffs received should be offset against the minimum wage otherwise due to them. The defendants also sought to prove that any non-tipped work that the plaintiffs engaged in was merely incidental to their tipped work. Finally, the defendants asserted that the plaintiffs worked only nine hours a day, and that, therefore, they were

not entitled to additional "spread of hours" pay and were entitled to only one hour of overtime each day.

The case was tried to the Court on September 29, 2014. The Court now issues these findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

# I.  FINDINGS OF FACT[1]

## A.  The Parties

Akdeniz is a Turkish restaurant in midtown Manhattan. The restaurant is owned by defendant Erenler, Inc., a New York corporation. Delivery service is a significant part of the restaurant's business; at the time of the trial more than 80% of the restaurant's business came through Seamless Web—a company that allows customers to order food online for delivery by the restaurant.

Defendant Murath Aktas works at Akdeniz, and has worked there since the restaurant opened in 2004. During the time that the plaintiffs were employed at the restaurant, Mr. Aktas was a manager at Akdeniz. Mr. Aktas hired all three of the plaintiffs to work at the restaurant. Defendant Suleyman Yeniler was a chef at the restaurant during the time that the plaintiffs worked there and was still its chef on the date of trial. The parties stipulated that the plaintiffs were the defendants' employees.

Plaintiff Ivan Marquez began working at Akdeniz in the middle of 2005. He worked at Akdeniz until November 2012.[2] Mr. Marquez was a delivery worker for the restaurant and his

---

[1] The Court's findings of fact are drawn from testimony at trial, the deposition of Mr. Ramirez submitted in lieu of live testimony, and, where noted, the parties' trial exhibits. Citations for quoted testimony are to the official trial transcript ("Transcript").

[2] Mr. Marquez testified that he left Akdeniz in 2011. However, Mr. Marquez's colleague, Mr. Martinez also testified that he and Mr. Marquez left the restaurant's employ on the same day in November 2012. That testimony was confirmed by Mr. Aktas, who testified that Mr. Marquez left Akdeniz in October of 2012. Checks submitted by Defendants show that Mr. Marquez received checks in October 2012. The Court credits the documentary evidence and Mr. Martinez's testimony and believes that Mr. Marquez spoke inaccurately when he described the year of his departure as 2011.

principal responsibility was the delivery of food to the restaurant's customers. As described in more detail below, a portion of Mr. Marquez's job was also spent undertaking other tasks for Akdeniz.

Plaintiff Lucio Alberto Martinez was hired as a delivery worker for Akdeniz in April 2010. He worked in that capacity until November 2012. Like Mr. Marquez, Mr. Martinez did some work in addition to his deliveries, which is described in more detail below.

Plaintiff Concepcion Ramirez was hired to work as a busboy at Akdeniz in April 2006. He worked as a busboy for approximately two and a half years and then became a "food runner" at the restaurant. Mr. Ramirez left the restaurant on December 31, 2011. As a busboy, Mr. Ramirez removed food and drinks from customers' tables. In addition to serving the restaurant's customers as a busboy and food runner, Mr. Ramirez did a significant amount of other work at the restaurant—cleaning the restaurant, packing deliveries, and serving other employees. That work is described in more detail below. While his change in title from busboy to food runner came with a small increase in the amount of house pay that he received, his job responsibilities did not change.

**B. Recordkeeping at Akdeniz**

The defendants did not keep records of the hours that their employees worked. No evidence was presented to the Court that the restaurant maintained time records for its employees. Mr. Aktas, the restaurant's manager, expressly acknowledged in his testimony that Akdeniz did not keep time records. No evidence was presented that the employers noted the hours that the plaintiffs began and ended work each day; employees did not clock in or clock out, nor did they observe their employers noting the time of employees' arrival or departure. Employees at Akdeniz also did not receive statements detailing the number of hours that they worked or the pay that they received. Mr. Aktas testified that Akdeniz did not keep employment records at all, other than receipts for some payments made to employees.

The defendants presented a chart to the Court prepared for purposes of this litigation by the restaurant's current business manager, Mike Kocak. That chart purported to show the number of

hours that the plaintiffs worked during each weekly pay period throughout their time at the restaurant. However, defendants presented no evidence to substantiate the number of hours presented in that chart. According to Mr. Kocak's testimony, the source of that information was Mr. Aktas, but Mr. Aktas did not testify regarding the basis for the hours presented in the chart. In fact, Mr. Aktas's testimony—that Akdeniz did not keep time records, "but . . . it was always the same, same amount of times"—runs contrary to the information presented in the chart, which shows variations in the number of hours each plaintiff worked in different pay periods. *See* Transcript at 101.

The restaurant did maintain some records of how much they paid their workers. Each of the plaintiffs was paid weekly, on Fridays. Those payments consisted of their house pay for the week (at a rate of $30 or $50 a day), plus tips. While, of necessity, the restaurant calculated and distributed tips paid by means of Seamless Web or credit card, the plaintiffs generally kept cash tips that they received directly from customers. For most of their time at the restaurant, defendants paid the plaintiffs in cash. Starting in 2011, however, plaintiffs Marquez and Martinez began to receive their weekly payment by check. Defendants introduced a number of checks made by Erenler, Inc. to Mr. Marquez and Mr. Martinez as exhibits at trial.

The Court heard testimony that the plaintiffs signed receipts for the amount of money they received when they were paid for the week on Fridays. The testimony was unclear whether or not those receipts reflected the entire amount paid to each employee, including house pay, or just the amount of tips that they received. The receipts did not include the amount of cash tips received by plaintiffs. There was no testimony that the receipts indicated the number of hours worked by plaintiffs during the week. Defendants' witness Mr. Kocak asserted that he used a collection of those receipts to prepare the chart summarizing the amounts paid to plaintiffs during the course of their employment. None of the receipts were introduced into evidence, however.

It is, therefore, not possible on this record for the Court to credit the accuracy or completeness of the chart presented by defendants to demonstrate the amount paid to the plaintiffs. That information is unsupported by documentary or testimonial evidence. Instead, it appears to be contradicted by the only testimony by defendants' witness on the topic. In any event, defendants' chart cannot reasonably be described as a contemporaneous or definitive record of the hours worked by plaintiffs.

### C. Plaintiffs' Hours of Work and Wages

Under the FLSA, employers are required to "make, keep, and preserve" records of their employees' "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). Employers must keep payroll records for at least three years and earnings records for at least two years. 29 C.F.R. §§ 516.5(a), 516.6(a)(1). Under the NYLL, employers must "establish, maintain, and preserve" detailed weekly payroll records for each employee "for not less than six years." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6(a); N.Y. Lab. Law § 195, 661.

If an employer does not maintain adequate records, courts employ a burden-shifting scheme to determine the number of hours an employee worked. First, the employee must put forth evidence that shows "he performed work for which he was improperly compensated" and "the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The employee's burden "is not high," and can be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (internal citations omitted). Once the employee has made this showing, the burden shifts to the employer to put forth evidence that either shows the "precise amount of work performed" by the employee or negates "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (quoting *Anderson*, 328 U.S. at 687-88).

Here, given that defendants kept no payroll or earnings records, the Court must accept plaintiffs' recollections of the hours they worked unless defendants can produce evidence to the

contrary. Defendants have not done so; thus, the Court affords plaintiffs' recollections controlling weight.

Akdeniz was open for business Monday through Saturday, and it was closed on Sundays. During the time that the plaintiffs worked at Akdeniz, the restaurant opened for business at 11:00 a.m. and closed at 10:00 p.m. Although the restaurant formally closed at 10:00 p.m. and the Seamless Web cut off time was also 10:00 p.m., some deliveries were made after that time and some delivery workers would work until shortly after 10:00 p.m. to complete those last deliveries. Customers eating inside the restaurant did stay after 10:00 p.m. on occasion, and Mr. Ramirez, the busboy and food runner, would remain on duty until the last customer left the restaurant.

Most deliveries at the restaurant happened during one of two shifts. The lunch delivery shift generally began at noon and ended at 3:00 p.m. Two hours elapsed between the lunch delivery shift and the dinner delivery shift, which began around 5:00 p.m. and ended sometime after 10:00 p.m. There was a difference between the testimony of Mr. Marquez and Mr. Martinez and that of defendants' witnesses regarding what happened during the two-hour window between the lunch and dinner shifts. According to Mr. Marquez and Mr. Martinez, they ate lunch at the restaurant for approximately half an hour and spent the remainder of the time doing work for the restaurant. Mr. Aktas described that two-hour period as a "break" and the restaurant did not include it in their calculation of hours that the employees worked. Transcript at 90. Mr. Hernandez, a current employee of the restaurant called to testify by defendants, asserted that he was not "required" to stay at the restaurant during that window and that he did not "always" stay there during that period. *Id.* at 69.

No witness testified, however, that Mr. Marquez and Mr. Martinez were not required to stay at the restaurant during the "break" or that they did not, in fact, work during that period as they described. There was some testimony that delivery workers had to be available during that window to handle delivery requests that came in between 3:00 p.m. and 5:00 p.m. Employees had the

opportunity to get tips for sporadic deliveries if they stayed at work during that window. There is no question that Mr. Marquez and Mr. Martinez did work for the restaurant other than their deliveries—including cutting cardboard, moving bicycles, and cleaning the sidewalk. While there is a legitimate question regarding the amount of time that Mr. Marquez and Mr. Martinez spent doing that work—discussed in more detail below—the Court does not believe that they could have done that work unless they regularly worked at the restaurant for some amount of time during the 3:00 p.m. to 5:00 p.m. window. Significantly, there is no evidence that the plaintiffs "clocked out" for the 3:00 p.m. to 5:00 p.m. window.

The Court believes that, while Akdeniz managers may have viewed this window as a "break" and did not compensate the plaintiffs for that time, the employees remained on the job site and did work as called for during that period. Based on the Court's review of the evidence and the witnesses' demeanor at trial, the Court believes the testimony of Mr. Marquez and Mr. Martinez that they regularly worked during the two-hour afternoon window from 3:00 p.m. to 5:00 p.m., with the exception of a half hour lunch break.

Mr. Marquez was hired to work every day that the restaurant was open—Monday through Saturday. During his nearly eight years at the restaurant, he took only one week off, after he was injured in a car accident while delivering food. Mr. Marquez testified that he arrived at the restaurant between 10:30 a.m. and 10:45 a.m. every morning. That testimony was confirmed by Mr. Aktas. Mr. Marquez worked until 10:15 p.m. or 10:30 p.m. each night. Mr. Aktas and Mr. Hernandez both testified that some delivery workers would be allowed to leave earlier than 10:00 p.m. when there was not enough work to be done, but neither testified specifically that either Mr. Marquez or Mr. Martinez was ever allowed to leave early. As a result, the Court finds that Mr. Marquez's work day spanned the hours of 10:45 a.m. to 10:15 p.m. each day, a spread of 11 and a half hours. Mr. Marquez had a 30-minute break for lunch each day.

During the first three months of his employment at Akdeniz—April through June, 2010—Mr. Martinez worked Monday through Friday each week. After that, Mr. Martinez worked Monday through Saturday. During his time at Akdeniz, Mr. Martinez took only one day off of work, for which he was not paid. Mr. Martinez's work schedule was the same as that of Mr. Marquez. The Court finds that Mr. Martinez's work day spanned the hours of 10:45 a.m. to 10:15 p.m. for each day that he worked, with a 30-minute lunch break.

Mr. Marquez and Mr. Martinez were each paid $30 a day in house pay for every day that they worked. Neither received a raise during the time that they worked at the restaurant. The amount of house pay never changed, regardless of the number of hours plaintiffs worked on any given day. Mr. Marquez was paid his house pay during the one week that he did not work. As described above, both Mr. Marquez and Mr. Martinez were also paid by the restaurant for tips paid by customers via Seamless Web or credit card. They retained cash tips paid directly to them by customers. There is no contention that Mr. Marquez and Mr. Martinez were not paid for their work or that they were required to share their tips with people other than fellow delivery workers who helped them with specific deliveries.

 Mr. Ramirez was a busboy and, later, a food runner. Generally, Mr. Ramirez worked Monday through Saturday during his entire time at Akdeniz. However, during one three-month period in the final year of his employment, Mr. Ramirez did not work at Akdeniz on Saturdays. During the first six months that he worked at Akdeniz—April through August, 2006—Mr. Ramirez worked only during the lunch period, from 11:00 a.m. to 3:00 p.m. Beginning in September 2006, Mr. Ramirez worked a full day each day that he worked, from 11:00 a.m. until approximately 11:00 p.m. During his time at Akdeniz, Mr. Ramirez never took a sick day or a vacation day.

Until his promotion to food runner, Mr. Ramirez was paid $30 a day in house pay. The Court believes that during the six-month period when he worked only lunches, it is most likely that Mr. Ramirez was paid only $15 a day in house pay. The Court draws this inference from the

testimony of Mr. Placido and Mr. Hernandez, who described the $30 per day house pay as consisting of $15 for each of the lunch and dinner shifts. Following his promotion to food runner beginning in October 2008, through his departure at the end of December 2011, Mr. Ramirez received $50 a day in house pay. The amount of house pay did not vary based on the number of hours worked by Mr. Ramirez in a given day. Mr. Ramirez also received tips. There is no contention that Mr. Ramirez was not paid for his work or that he was required to share his tips.

### D. Plaintiffs' Non-Tipped Work

There were significant variations in the witnesses' accounts regarding the amount of time that Mr. Marquez and Mr. Martinez spent doing non-tipped work for Akdeniz. It is undisputed that they did non-tipped work in addition to their deliveries. Mr. Aktas, their manager, testified that Mr. Marquez cleaned the area where the delivery workers waited for deliveries and that he removed delivery bicycles from the restaurant. During the time that plaintiffs worked at the restaurant, there were at first four to five, and later, approximately seven bicycles used by delivery workers. Mr. Aktas also testified that Mr. Martinez cut cardboard to place in the bottom of the bags for some deliveries. According to Mr. Aktas, the job of cutting cardboard rotated between the various delivery workers—each worker other than Mr. Marquez would cut cardboard for a week every ten weeks.

Mr. Marquez told a very different story. He testified that, in addition to taking out the bicycles and cleaning the delivery area, he also moved vendors' deliveries from the street to the inside of the restaurant and was sent out to run errands. Mr. Marquez's testimony regarding the amount of time he spent doing those tasks varied from that of Mr. Aktas and even his co-plaintiff, Mr. Martinez. According to Mr. Marquez, he spent "[a]round two hours, two and a half hours, three" doing those tasks. Transcript at 21. He claimed he cut cardboard continuously, if not daily, for "[l]ike three, three and a half hours." Transcript at 22, 27. According to Mr. Marquez, it took him 45 minutes to clean the sidewalk. Mr. Marquez's testimony conflicted with that of Mr. Aktas,

who agreed that Mr. Marquez cleaned the sidewalk and moved the bicycles, but estimated that those tasks required only 20 minutes to complete. Mr. Aktas also testified that Mr. Marquez never cut cardboard and that delivery workers alternated weeks, every eleven weeks, when they cut cardboard for the entire week. Mr. Aktas estimated the amount of time required to cut cardboard in any given day at 30 minutes, considerably less than Mr. Marquez's "three and a half hours." Mr. Aktas also testified that kitchen workers, not delivery workers, were responsible for moving deliveries from the street into the restaurant. That testimony was confirmed by Mr. Yeniler.

Having reviewed the evidence presented and after evaluating the demeanor and credibility of the witnesses, the Court finds Mr. Marquez's account of the amount of his non-tipped work incredible. The Court believes that he did do some non-tipped work every day—consisting of moving the bicycles and cleaning the delivery area. That work was incidental to the work that he did as a delivery worker. The Court believes that it is possible, indeed likely, that on occasion during his seven years at the restaurant, he helped with other tasks, like moving boxes that had been delivered or helping other workers cut cardboard, but the Court does not believe that work was daily or continuous, and does not believe that it took up as much time in the day, every day, as Mr. Marquez claims. For those reasons, the Court finds that Mr. Marquez worked less than two hours a day on non-tipped work and that his non-tipped work consisted primarily of work that can reasonably be described as incidental to his delivery duties—cleaning his immediate work area, moving bicycles, and, occasionally, helping others cut cardboard.

Mr. Martinez testified that he spent more than two hours a day on non-tipped tasks. Those tasks included taking out the bicycles and accepting deliveries. If there were boxes in the restaurant, Mr. Martinez says that he would take them downstairs. He also testified that in one out of every four weeks, he would spend part of his time cutting cardboard. Mr. Aktas testified that Mr. Martinez cut cardboard only one week out of every ten. As with Mr. Marquez, the Court believes that Mr. Martinez spent time working on tasks other than deliveries. He cut cardboard during

specified periods, but not every day.  Mr. Martinez's testimony that he moved bicycles, both in the morning and the afternoon, is contradicted by the testimony of Mr. Marquez, who said that moving the bicycles was his responsibility and that Mr. Martinez and others periodically volunteered to assist in that task "out of their own heart."  Transcript at 29.  It was also contradicted by the testimony of Mr. Aktas, who testified that it was Mr. Marquez's job to move the bicycles.

As with Mr. Marquez, having reviewed the evidence presented and after evaluating the demeanor and credibility of the witnesses, the Court finds Mr. Martinez's account of the amount of his non-tipped work incredible.  The Court believes that he did some non-tipped work every day— he periodically helped Mr. Marquez move the bicycles; he also periodically helped to cut cardboard.  That work was incidental to the work that he did as a delivery worker.  The Court believes that it is possible, indeed likely, that he occasionally helped with other tasks, like moving boxes, but the Court does not believe that work was daily or continuous, and does not believe that it took up as much time in the day, every day, as Mr. Martinez claims.  For those reasons, the Court finds that Mr. Martinez worked less than two hours a day on non-tipped work and that his non-tipped work consisted primarily of work that can reasonably be described as incidental to his delivery duties.

Mr. Ramirez testified that a substantial portion of his time was spent engaged in non-tipped activities.  Unlike Mr. Marquez and Mr. Martinez, the Court fully credits Mr. Ramirez's account of the work that he performed at Akdeniz, which was not refuted by testimony from defendants' witnesses.  After he arrived at the restaurant, Mr. Ramirez would clean the restaurant until the lunch rush at 12:00 p.m., when he began to serve tables as a busboy or food runner.  After 2:00 p.m., he helped package deliveries and cleaned the dining room anew.  At 4:00 p.m., he served lunch to the other employees, including the delivery workers, who testified that they ate at that time.  He then ate a short dinner before aiding with packaging deliveries until the dinner rush at 6:00 p.m., when he again took up his responsibilities as a busboy, waiting on tables, until 9:00 p.m. or later.  He stayed at the restaurant until the last customer left and then cleaned the restaurant for another half hour

before leaving around 11:00 p.m. The Court believes that a substantial portion of Mr. Ramirez's work was not tipped; only his hours working as a busboy. The large number of hours that he spent cleaning the restaurant, packaging deliveries, and serving other workers—representing more than half of his day—cannot reasonably be described as incidental to his tipped duties as a busboy or food runner.

Curiously, defendants did not present any evidence to refute Mr. Ramirez's account of his non-tipped work at the restaurant. They called one witness, Muammer Zenderlioglu, who is currently a food runner at the restaurant, but he began working at the restaurant in 2013, after all of the plaintiffs had departed. The Court refuses to extrapolate from his testimony to infer the conditions applicable to Mr. Ramirez. The Court notes that Mr. Zenderlioglu was paid $400 a week in house pay—more than twice that of plaintiffs Marquez and Martinez and $100 more than Mr. Ramirez—which only emphasizes the fact that Mr. Zenderlioglu's work conditions cannot be assumed to be equivalent to those of Mr. Ramirez. Defense counsel questioned Mr. Zenderlioglu about whether or not he cut cardboard and moved bicycles. Mr. Zenderlioglu testified that he did not, but those were not tasks that Mr. Ramirez claimed to have undertaken. Defense counsel did not ask Mr. Zenderlioglu if he cleaned the restaurant, served other workers, or helped to prepare deliveries. The Court finds the testimony elicited from Mr. Zenderlioglu to be of little relevance and affords it no weight.

### E. Notice to Employees of Tip Credit

In order for the defendants to count tips toward their obligation to pay plaintiffs a minimum wage, they are required by law to notify plaintiffs of the tip credit and their intent to use it. 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.5(b). The defendants assert that they satisfied this notice requirement by pointing to two means of communicating that information to the plaintiffs—verbally at the time of the plaintiffs' hiring and through notices posted in the restaurant. The Court will evaluate the facts presented at trial with respect to each method in turn.

### 1. *Verbal Communications Regarding Tip Credit*

All of the plaintiffs were hired by Mr. Aktas and he discussed pay with each of them around the time that they were hired.  Mr. Marquez testified that he was told that he would receive $30 a day.  According to Mr. Marquez, he never discussed tips with Mr. Aktas; he assumed he would receive tips because they had hired him to make deliveries.  Mr. Martinez's account was similar:  he was told that he would receive $30 a day and that he would receive tips.  Mr. Ramirez also testified that he was told that he would receive $30 a day, and that he would receive tips.  The plaintiffs asserted that they were not informed that their tips would be used by defendants to offset their wages.

At trial, Mr. Aktas testified that he told the plaintiffs when they were hired that they would be paid a flat amount of house pay, plus their tips.  According to his testimony at trial, he told the plaintiffs that the combination of house pay, plus the tips that they received, would exceed the minimum wage, including one hour of overtime at a pay rate of time and a half, assuming that they worked nine hours a day.  However, Mr. Aktas conceded at trial that "I did not really make a technical explanation for them."  Transcript at 91.  Moreover, during his deposition, Mr. Aktas testified that he did *not* tell delivery workers that tips accounted for the difference between the minimum wage and their house pay.  When confronted with this inconsistency at trial, his only explanation was that he had misunderstood the question during his deposition.

As a result, having reviewed the evidence and the witnesses' demeanor at trial, the Court concludes that the plaintiffs were told only that their pay would consist of a flat daily amount, plus tips.  The Court does not believe that defendants provided a "technical explanation" of the minimum wage, the tip credit, or their intent to avail themselves of the tip credit.  The plaintiffs were not told that they were entitled to be paid the minimum wage and that their tips were to offset the amount otherwise owed to them under the minimum wage laws.

13

## 2.  *Posted Notices Regarding the Minimum Wage*

The defendants introduced into evidence two posters containing notices regarding the minimum wage.  The first poster was a pre-printed form issued by the United States Department of Labor.  The form states that it was created in July 2009 and announces the federal minimum wage of $7.25, which became effective on July 24, 2009.  The form includes the following text under the heading "Tip Credit":  "Employers of 'tipped employees' must pay a cash wage of at least $2.13 per hour *if* they claim a tip credit against their minimum wage obligation.  If an employee's tips combined with the employer's cash wage of $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference.  *Certain other conditions must also be met.*"  Defendants' Exhibit 8 (emphasis added).  The second, a pre-printed form published by the State of New York, announces the State's basic minimum wage of $8.00 per hour, which became effective on December 31, 2013.  The form describes overtime pay requirements.  It also includes the following text in a section labelled "Tips":  "A specified allowance *may be* credited toward the minimum wage for tips earned."  Defendants' Exhibit 9 (emphasis added).

The Court finds that these pre-printed forms are insufficient to meet defendants' notice obligations.  At most, these "generic government poster[s]" could "inform employees that minimum wage obligations exist, but could not possibly inform employees that their employer[] intend[ed] to take the tip credit with respect to their salary."  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 289 (S.D.N.Y. 2011).  Neither of the forms presented at trial purports to communicate whether or not Akdeniz in particular intended to take advantage of the tip credit.  They simply sketch the general rule; they do not communicate concretely Akdeniz's intentions.

Moreover, the posters proffered by defendants cannot have been posted at the relevant times and the Court affords little weight to testimony that other, similar forms were in place when the plaintiffs worked at Akdeniz.  Witnesses called by the defense testified that the posters are currently on display at the restaurant.  As noted above, the forms introduced into evidence were

14

dated July 2009 and December 2013, respectively. As a result, neither of those forms could have been posted during the entire time plaintiffs worked at Akdeniz. Instead of introducing posters that might possibly have been posted during the relevant time periods, counsel for the defendants elicited testimony from his witnesses that "similar" forms were posted during the relevant periods. One defense witness at first testified that the forms, including the notice dated 2013, had been posted at the restaurant years earlier, during the plaintiffs' employ. After the dates on the forms were pointed out to defense counsel, counsel inquired of that witness again. The witness then answered the following question in the affirmative: "Was what was posted similar looking to one of those two exhibits we showed you?" Transcript at 78.

By contrast, all of the plaintiffs testified that they did not see notices posted at the restaurant. Mr. Placido, a former delivery worker and the one witness with no apparent interest in the outcome of the case, also testified that he never saw posters about the minimum wage or overtime laws.

The Court believes that the two posters introduced into evidence by defendants are currently posted at the restaurant. However, the Court believes the testimony of the plaintiffs that they did not see the posters. More importantly, the Court cannot conclude on the basis of the testimony and evidence presented by defendants that anything with the same or even similar content to the forms introduced at trial was posted during the time that plaintiffs worked at Akdeniz. The testimony of a lay person that a document "looked like" a detailed notice regarding the minimum wage laws does not support a conclusion that the document was identical or even similar in content to the document introduced into evidence. As defense counsel noted at trial, "the record should reflect that nobody reads these ever." Transcript at 78.

Given that, it is impossible for the Court to conclude that forms identical or even similar to those presented at trial were posted during plaintiffs' time at Akdeniz. First, the forms cannot have been identical, because the federal and state minimum wage rates changed during, and have changed since, the time that plaintiffs worked at Akdeniz. Second, the Court cannot understand why

defendants could expect the Court to extrapolate that the "similar" notices purportedly seen by their witness included boilerplate text equivalent to that of the notices placed in evidence. As described above, even if posters including substantially similar language regarding the tip credit *had* been posted, the forms would not have been sufficient to establish a basis for defendants to avail themselves of the tip credit.

## II.  ANALYSIS

### A.  Minimum Wage and Overtime Protections

The FLSA "embodies 'a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act.'" *Moon v. Kwon*, 248 F. Supp. 2d 201, 227 (S.D.N.Y. 2002) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944)). To that end, the FLSA establishes a federal minimum wage for all employees—$7.25 per hour of work during all times relevant to this litigation. 29 U.S.C. § 206. Employers of tipped employees are entitled to use employees' tip income as a credit toward reaching the statutory minimum wage amount, subject to a number of requirements outlined below. *See* 29 U.S.C. §§ 203(m), 203(t). The FLSA also provides that any employee who works more than forty hours in a week is entitled to overtime pay for those hours in excess of forty, at a rate of one and a half times his regular rate of pay. *See* 29 U.S.C. § 207(a); 29 C.F.R. § 778.107.

"Employee" is defined in the FLSA as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Both sides agree that plaintiffs were employees and defendants were their employers. Thus, plaintiffs are covered by the minimum wage and overtime protections of the FLSA. The Court finds plaintiffs worked between eleven and twelve hours each day, for—with a few brief exceptions—six days each week. Each plaintiff is entitled to overtime pay under the FLSA for all hours worked in excess of forty per week.

The New York Labor Law imposes similar obligations on employers, including setting a minimum wage[3] and requiring employers to pay their employees at a rate of one and a half times their regular rate for all hours in excess of forty worked in a given week.  *See* N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.1, 142-2.2.  The NYLL defines "employee" as "any person employed for hire by an employer in any employment" and defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  N.Y. Lab. Law § 190.  Because both sides agree that plaintiffs were employees and defendants were their employers, plaintiffs are covered by the minimum wage and overtime protections of the NYLL.  Each plaintiff is entitled to overtime pay under the NYLL for all hours worked in excess of forty per week.

## B.  Notice and Recordkeeping Requirements

The FLSA requires employers to "make, keep, and preserve" records of their employees' "wages, hours, and other conditions and practices of employment."  29 U.S.C. § 211(c).  These records must include, for each employee over age 19:  (1) full name; (2) home address; (3) gender; (4) occupation; (5) time and day that the employee's workweek begins; (6) regular hourly pay rate for any week in which employee worked overtime; (7) explanation of the basis of pay, *e.g.*, per hour, per day, or otherwise; (8) the amount of any payment excluded when computing an employee's "regular rate" of pay for overtime purposes; (9) hours worked each workday; (10) total hours worked each workweek; (11) total regular (non-overtime) wages due for hours worked; (12) total overtime wages due; (13) any additions to or deductions from pay; (14) total wages paid to the employee each pay period; and (15) the date of payment and pay period covered by that payment.  *See* 29 C.F.R. § 516.2(a).  Payroll records must be retained by employers for a minimum of three years, and all other

---

[3] The New York minimum wage rate has been the same as the federal rate—$7.25 per hour—since July 24, 2009.  N.Y. Comp. Codes R. & Regs. tit. 12 §142-2.1(a).  Prior to that, the New York minimum wage rate during the times relevant to this action was as follows:  $6.75 per hour up to and including December 31, 2006; $7.15 per hour from January 1, 2007 up to and including July 23, 2009.  *Id*.; N.Y. Labor Law § 652.

records must be retained for a minimum of two years. *See* 29 C.F.R. § 516.5(a), 516.6. These recordkeeping and retention requirements "are not mere technicalities, but substantive obligations that are 'fundamental underpinnings' of the FLSA and critical to ensuring the statute's effectiveness." A*maya v. Superior Tile & Granite Corp.*, 10-cv-4525 (PGG), 2012 WL 130425, at *6 (S.D.N.Y. Jan. 17, 2012) (quoting *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 607 (5th Cir. 1966)). It is unlawful for any employer to violate these recordkeeping requirements. 29 U.S.C. § 215(a)(5).

Like the FLSA, the NYLL imposes recordkeeping obligations on employers. Employers must maintain employment records and "contemporaneous, true, and accurate" payroll records with information substantially similar to that required by the FLSA, but must keep those records for longer—at least six years. *See* N.Y. Lab. Law § 195, 661; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6(a)

In addition, the NYLL requires that employers provide a written notice to employees, when they are hired and once a year thereafter, in both English and the employee's self-identified primary language, containing the following information: (1) rate of pay; (2) basis for rate of pay; (3) allowances or credits claimed, *e.g.*, tip credit; (4) regular pay day; (5) name of employer, including any "doing business as" names used; (6) employer's physical and mailing addresses; and (7) employer's phone number. *See* N.Y. Lab. Law § 195-1(a). Employers must obtain each employee's signature upon providing them with this notice, and must retain that signed receipt for at least six years. *Id.* In addition to the annual notice, employers must provide to employees "with every payment of wages," a notice containing the following information: (1) dates covered by the wages; (2) employee's name; (3) employer's name; (4) employer's address and phone number; (5) rate of pay; (6) basis for rate of pay; (7) amount of gross wages; (8) allowances or credits claimed, *e.g.*, tip credit; (9) amount of net wages; (10) overtime rate of pay; (11) number of regular hours worked; and (12) number of overtime hours worked. *See id.* § 195-3.

Based on the evidence at trial, the Court finds that defendants violated the FLSA and NYLL by failing to maintain the required employment records, failing to keep any such records for the specified time periods, and failing to supply plaintiffs with the mandatory wage notices required by the NYLL.

### C. Tip Credit

Both the FLSA and NYLL allow employers to pay "tipped employees" less than the prescribed minimum wage by taking a "tip credit," whereby employers count the amount of money an employee receives in tips towards fulfilling their minimum wage obligations. 29 U.S.C. §§ 203(m), 203(t); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3(b). Tipped employees must be paid at least $2.13 per hour under federal law and $5.00 per hour under New York law, and the amount paid in wages plus tips must add up to at least the full regular minimum wage amount. 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3(b). An employer may only take a tip credit against an employee's wages if the employer complies with specific statutory requirements. *See* 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146-2.2, 142-2.5(b). Neither party disputes that plaintiffs were tipped employees under both statutes. Their dispute lies in whether defendants complied with the specific statutory requirements that would allow them to apply the tip credit to plaintiffs' wages. But regardless of defendants' noncompliance with the tip credit requirements described below, defendants would be liable to plaintiffs under New York law because plaintiffs were paid less than the required $5.00 per hour.

One of the specific statutory requirements for using the tip credit is a notice requirement. "Congress 'expressly required notice as a condition of the tip credit,'" thus employers may not apply the tip credit to their employees' wages unless they give their employees proper notice. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011) (quoting *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322–23 (1st Cir. 1992)); *see* 29 U.S.C. § 203(m). The notice requirement is strict and employers carry the burden of showing that they have complied with it. *See id.* at 288. Employers

must give an employee proper notice "even if the employee received tips at least equivalent to the minimum wage," as defendants claim was the case here. *Id.* at 287 (quoting *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002)).

Proper notice requires "at the very least[,] notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." *Id.* at 287-88 (quoting *Tango's Restaurant*, 969 F.2d at 1322). Explaining an employer's "payment structure" is not enough, nor is "stat[ing] that the pay would be part hourly wages, part tips"—rather, employers must inform employees that they "intend to take a tip credit with respect to [employees'] salary." *Id.* at 288. An employer who does not give employees notice of its intent to use the tip credit has failed to give proper notice and is not entitled to apply the tip credit to employees' wages. *See* 29 U.S.C. § 203(m).

But "if the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide." *Copantitla*, 788 F. Supp. 2d at 288 (quoting *Tango's Rest.*, 969 F.2d at 1323) (internal alteration omitted). For example, an employer could "'provid[e] employees with a copy of § 203(m) and inform[] them that their tips will be used as a credit against the minimum wage as permitted by law.'" *Id.* (quoting *Chan v. Sung Yue Tung Corp*, 03-cv-6048 (GEL), 2007 WL 313483, at *18 (S.D.N.Y. Feb 1, 2007)).

The Court finds that defendants did not provide plaintiffs with the notice required by the FLSA and are thus unable to apply the tip credit to plaintiffs' wages. At trial, Mr. Aktas conceded that he "did not really make a technical explanation for [plaintiffs]" regarding the tip credit and defendants' intent to use it. Transcript at 91. Yet the law required him to do so. The Court also found the posters currently on display at Akdeniz were not displayed during the time of plaintiffs' employment. However, the posters would be insufficient even if they had been posted at the relevant times—they are generic government forms containing generic information about employers' minimum wage obligations. Such boilerplate language is insufficient to put employees on notice of an employer's intent to apply the tip credit to their wages.

Furthermore, employers must fulfill additional notice and recordkeeping obligations to take the tip credit under the NYLL. In addition to the general NYLL notice and recordkeeping requirements described above, in order to take the tip credit employers must provide "substantial evidence," such as a statement signed by the employee, that each tipped employee actually received in tips the amount claimed by the employer as a tip credit. *See* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.5(b)(1). Employers must also keep a weekly record of the amount of any tip credit they claim. *Id.* Defendants presented no evidence whatsoever that would have entitled them to use the tip credit under New York law—they failed to produce signed tip statements as required by 12 N.Y.C.R.R. § 142-2.5(b)(1); they failed to keep contemporaneous and accurate records as required by N.Y. Lab. Law § 195 and 661; they failed to maintain employment records for six years as required by N.Y. Lab. Law § 195 and 661 and 12 N.Y.C.R.R. § 142-2.6(a); they failed to provide annual statements to their employees as required by N.Y. Lab. Law § 195-1(a); they failed to provide weekly statements with employees' wages as required by N.Y. Lab. Law § 195-3; and they failed to pay plaintiffs the tipped minimum wage of $5.00 per hour, even by their own calculations of plaintiffs' hours. Defendants' failures render them unable to apply the NYLL tip credit to plaintiffs' wages.

In addition to these requirements, there are further limitations on an employer's use of the tip credit where an employee performs both tipped and non-tipped work. The Department of Labor has stated that, under the FLSA, "tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Chhab v. Darden Rests., Inc.*, 11-cv-8345 (NRB), 2013 WL 5308004, *3 (S.D.N.Y. Sept. 20, 2013) (citing U.S. Dept. of Labor, Wage and Hour Division, Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (revised July 2013), *available at* http://www.dol.gov/whd/regs/compliance/whdfs15.pdf). Under the NYLL, an employer cannot

take a tip credit for any day that an employee spends more than twenty percent of his shift or two hours or more, whichever is less, doing non-tipped work. *See* N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146-2.9, 146-3.3, 146-3.4. Here, the Court found that Mr. Marquez and Mr. Martinez spent less than two hours each day engaged in non-tipped work, and that Mr. Ramirez spent more than two hours each day engaged in non-tipped work. These findings are irrelevant to the outcome of this case, however, as defendants were not entitled to take the tip credit for any of the hours worked by plaintiffs because defendants did not meet the tip credit's notice requirements.

### D. Spread of Hours

Under the NYLL, an employee is entitled to an extra hour's pay on any day he works for which "the spread of hours exceeds 10 hours." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." *Id.* § 142-2.18. Except for Mr. Ramirez's first six months at Akdeniz when he worked only the lunch shift, all three plaintiffs worked a spread of hours greater than ten every day during their entire course of employment. They are entitled to an extra hour's pay for each of those days.

The Court notes that defense counsel and Mr. Aktas appeared to believe—incorrectly—that plaintiffs were not entitled to spread of hours pay because of an alleged two-hour midday break they claimed should be excluded from the hours calculation. As noted above, spread of hours pay is about the number of hours between the time an employee starts work and the time an employee ends work, not the number of hours worked. Thus, plaintiffs would be entitled to such pay even if the Court had agreed with defendants' assertion that plaintiffs benefited from a two-hour lunch break.

Figure 1, below, shows calculations for the spread of hours pay due each plaintiff under the NYLL, calculated by adding up an extra hour's pay at the minimum wage rate for every day each plaintiff worked a spread of hours greater than ten. The Court finds that Mr. Martinez is owed

$5,872.50 in unpaid spread of hours pay; Mr. Marquez is owed $13,433.70 in unpaid spread of hours pay; and Mr. Ramirez is owed $11,338.45 in unpaid spread of hours pay.

Figure 1: Unpaid Spread of Hours Pay Under the NYLL

| Plaintiff | Pay Period | | Weeks | Days/ Week | Min Wage Rate | Spread of Hours Pay Due |
|-----------|------------|-----|-------|------------|---------------|-------------------------|
| | From | To | | | | |
| **Martinez** | 4/4/2010 | 6/26/2010 | 11 | 5 | $7.25 | $398.75 |
| | 6/27/2010 | 11/17/2012 | 125 | 6 | $7.25 | $5,437.50 |
| | 11/18/2012 | 11/24/2012 | 1 | 5 | $7.25 | $36.25 |
| | | | | | TOTAL = | **$5,872.50** |
| **Marquez** | 11/26/2006 | 12/30/2006 | 5 | 6 | $6.75 | $202.50 |
| | 12/31/2007 | 7/25/2009 | 133 | 6 | $7.15 | $5,705.70 |
| | 7/26/2009 | 11/17/2012 | 173 | 6 | $7.25 | $7,525.50 |
| | 11/18/2012 | 11/24/2012 | 1 | 0 | $7.25 | $0 |
| | | | | | TOTAL = | **$13,433.70** |
| **Ramirez** | 11/26/2006 | 12/30/2006 | 5 | 6 | $ 6.75 | $202.50 |
| | 12/31/2007 | 10/4/2008 | 91 | 6 | $ 7.15 | $3,903.90 |
| | 10/5/2008 | 7/25/2009 | 42 | 6 | $ 7.15 | $1,801.80 |
| | 7/26/2009 | 10/1/2011 | 114 | 6 | $ 7.25 | $4,959.00 |
| | 10/2/2011 | 12/31/2011 | 13 | 5 | $ 7.25 | $471.25 |
| | | | | | TOTAL = | **$11,338.45** |

## III.   DAMAGES

### A.  Baseline Damages Calculation

Plaintiffs are entitled to damages amounting to "the difference between what plaintiffs should have been paid under the FLSA and [NYLL] and the amount that the [p]laintiffs were actually paid." *Amaya v. Superior Tile and Granite Co.*, 10-cv-4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012). Here, each plaintiff received a flat amount of house pay per day regardless of the number of hours he worked. Because defendants are not entitled to apply a tip credit to their wages, plaintiffs are entitled to the full minimum wage amount, including applicable overtime, for all hours they worked. *See Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 231 (S.D.N.Y. 2002)

(employer is liable for the difference between wages paid and full minimum wage rate where tip credit taken unlawfully); *Pineda-Herrera v. Da-Ar-Da, Inc.*, 09-cv-5140 (RLM), 2011 WL 2133825, at *1 n.4 (E.D.N.Y. May 26, 2011) (tips disregarded in computing wages paid to employees where no evidence employer entitled to take tip credit). To calculate damages, the Court subtracted the weekly amount paid to each plaintiff in house pay from the amount each plaintiff was entitled to receive under the FLSA—or NYLL, for claims prior to the FLSA statute of limitations period—at the regular and overtime minimum wage rates as applicable.

### B.  Statute of Limitations

The statute of limitations under the FLSA is two years, except in the case of willful violations, for which the statute of limitations is three years. 29 U.S.C. § 255(a). Willfulness in this context means "voluntary, deliberate, [or] intentional," as opposed to merely negligent. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). An employer commits a willful violation of the FLSA if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin*, 486 U.S. at 133). The burden is on the plaintiffs to show the defendants' actions were willful. *Id.* (citing *Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)).

Whether plaintiffs satisfied their burden of showing that defendants' actions were willful is a close question. While acknowledging some awareness of the minimum wage and overtime laws, defendants paid their workers a flat amount, regardless of how many hours they worked. They utterly failed to maintain time or employment records. But even as late as the date of trial, defendants appeared unaware of the impropriety of their conduct. They told their employees they would be paid for their work. They paid plaintiffs all the money they promised to pay them. On balance, the Court does not believe that plaintiffs have met their burden to show that defendants' conduct rises to the level of "reckless disregard." The Court finds, instead, that defendants were negligent in failing to meet their FLSA obligations, thus the statute of limitations on plaintiffs' FLSA

claims is two years.  Therefore, plaintiffs may collect for their FLSA claims dating back to November 27, 2010, two years before the complaint was filed in this case.

The NYLL statute of limitations is six years, regardless of whether a violation is deemed willful.  N.Y. Lab. Law § 663.  Thus, plaintiffs may collect for their NYLL claims dating back to November 27, 2006, six years before the complaint was filed in this case.

Figure 2, below, shows calculations for the unpaid wages due each plaintiff.  Each plaintiffs' lawful weekly pay was calculated by multiplying the regular minimum wage rate for the applicable time period by 40 hours, then adding to that figure the amount of overtime pay due for all hours in excess of 40 worked that week.  The amount plaintiffs received in house pay each week was subtracted from the lawful weekly pay amount to determine the total amount owed.  The Court finds that Mr. Martinez is owed $52,748.40 in unpaid wages; Mr. Marquez is owed $120,544.60 in unpaid wages; and Mr. Ramirez is owed $97,706.56 in unpaid wages.  Rows shaded in gray indicate the time period before November 27, 2010, for which damages are awarded under the NYLL at the applicable minimum and overtime wage rates.  Unshaded rows indicate the time period after November 27, 2010, for which damages are awarded under the FLSA at the applicable minimum and overtime wage rates.

Figure 2: Unpaid Minimum Wages and Overtime Under FLSA and NYLL

| Plaintiff | Pay Period | | Weeks | Hours/ Week | Min Wage Rate | OT Rate | Lawful Weekly Pay | "Credited" Weekly Pay | Owed/ Week | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|
| | From | To | | | | | | | | |
| Martinez | 4/4/2010 | 6/26/2010 | 11 | 55 | $7.25 | $10.88 | $453.20 | $150 | $303.20 | $3,335.20 |
| | 6/27/2010 | 11/27/2010 | 22 | 66 | $7.25 | $10.88 | $572.88 | $180 | $392.88 | $8,643.36 |
| | 11/28/2010 | 11/17/2012 | 103 | 66 | $7.25 | $10.88 | $572.88 | $180 | $392.88 | $40,466.64 |
| | 11/18/2012 | 11/24/2012 | 1 | 55 | $7.25 | $10.88 | $453.20 | $150 | $303.20 | $303.20 |
| | | | | | | | | | TOTAL = | $52,748.40 |
| Marquez | 11/26/2006 | 12/30/2006 | 5 | 66 | $6.75 | $10.13 | $533.38 | $180 | $353.38 | $1,766.90 |
| | 12/31/2006 | 7/25/2009 | 133 | 66 | $7.15 | $10.73 | $564.98 | $180 | $384.98 | $51,202.34 |
| | 7/26/2009 | 11/27/2010 | 69 | 66 | $7.25 | $10.88 | $572.88 | $180 | $392.88 | $27,108.72 |
| | 11/28/2010 | 11/17/2012 | 103 | 66 | $7.25 | $10.88 | $572.88 | $180 | $392.88 | $40,466.64 |
| | 11/18/2012 | 11/24/2012 | 1 | 0 | $7.25 | $10.88 | $0 | $180 | $0 | $0 |
| | | | | | | | | | TOTAL = | $120,544.60 |
| Ramirez | 11/26/2006 | 12/30/2006 | 5 | 72 | $6.75 | $10.13 | $594.16 | $180 | $414.16 | $2,070.80 |
| | 12/31/2006 | 10/4/2008 | 91 | 72 | $7.15 | $10.73 | $629.36 | $180 | $449.36 | $40,891.76 |
| | 10/5/2008 | 7/25/2009 | 42 | 72 | $7.15 | $10.73 | $629.36 | $300 | $329.36 | $13,833.12 |
| | 7/26/2009 | 11/27/2010 | 69 | 72 | $7.25 | $10.88 | $638.16 | $300 | $338.16 | $23,333.04 |
| | 11/28/2010 | 10/1/2011 | 44 | 72 | $7.25 | $10.88 | $638.16 | $300 | $338.16 | $14,879.04 |
| | 10/2/2011 | 12/31/2011 | 13 | 60 | $7.25 | $10.88 | $507.60 | $300 | $207.60 | $2,698.80 |
| | | | | | | | | | TOTAL = | $97,706.56 |

## C.  Liquidated Damages

Employees are also entitled to liquidated damages under the FLSA in an amount equal to

their unpaid wages, unless "the employer shows to the satisfaction of the court that [his] act or

omission . . . was in good faith and that he had reasonable grounds for believing that his act or

omission was not a violation of the Fair Labor Standards Act."  29 U.S.C § 260; *see* 29 U.S.C §

216(b).  Liquidated damages under the FLSA are not imposed as a penalty, but as "compensation to

the employee occasioned by the delay in receiving wages due caused by the employer's violation of

the FLSA."  *McLean v. Garage Mgmt. Corp.*, 10-cv-3950 (DLC), 2012 WL 1358739, at *5 (S.D.N.Y.

April 19, 2012) (quoting *Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)); *see also*

*Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 583 (1942).

Defendants may only avoid liquidated damages under the FLSA if they demonstrate that they "acted in subjective good faith with objectively reasonable grounds for believing that [their] acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008); *see* 29 U.S.C. § 260. Defendants' burden in this regard is high: "to establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *McLean*, 2012 WL 1358739, at \*5 (quoting *Barfield*, 537 F.3d at 150). In cases such as this one, "double damages [are] the norm and single damages the exception." *Herman*, 172 F.3d at 142 (citing *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Because defendants offered no evidence of subjective good faith or objectively reasonable grounds for their actions, the Court finds plaintiffs are entitled to liquidated damages under the FLSA.

Employees may also recover liquidated damages under the NYLL. Prior to a November 24, 2009 amendment to the NYLL, employees could recover as liquidated damages "25% of unpaid wages if [they] could prove that employers' NYLL violations were 'willful.'" *McLean*, 2012 WL 1358739, at \*8 (citing *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)). The NYLL standard for willfulness "do[es] not differ to any appreciable extent" from the standard for willfulness in FLSA cases. *Id.* at \*7 (citing *Kuebel,* 643 F.3d at 366). Thus, because the Court finds that defendants' actions were not willful under the FLSA, neither are they willful for the purpose of awarding liquidated damages under the pre-amendment NYLL. Plaintiffs are not entitled to NYLL liquidated damages for the time period before November 24, 2009.

The current law, as amended in 2009, shifts the burden to the employer: employees are entitled to liquidated damages under the NYLL "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a). Because the Court finds defendants failed to prove that their actions were taken in good faith,

plaintiffs are entitled to liquidated damages accruing after the NYLL's November 24, 2009 amendment.[4]

  While liquidated damages under the FLSA are compensatory, liquidated damages under the NYLL "constitute a penalty to deter an employer's willful withholding of wages due." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (quoting *Carter v. Frito–Lay, Inc.,* N.Y.S.2d 115, 116 (1st Dep't 1980), *aff'd.,* 438 N.Y.S.2d 80 (1981)).  Because each statute's liquidated damages provision serves a different purpose, "plaintiff[s] may recover under both statutes without obtaining an impermissible double recovery."  *Lanzetta v. Florio's Enterprises, Inc.*, 08-cv-6181 (DC), 2011 WL 3209521, at *5 (S.D.N.Y. July 27, 2011) (analogizing to discrimination cases, where plaintiffs may seek different types of damages under multiple statutes to obtain the greatest possible relief); *see also Tackie v. Keff Enterprises LLC*, 14-cv-2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) (noting that allowing recovery under both statutes is the majority approach in the Second Circuit); *Yu Y. Ho v. Sim Enterprises, Inc.*, 11-cv-2855 (PKC), 2014 WL 1998237 at *18-19 (S.D.N.Y. May 14, 2014) (noting double recovery is the majority approach in the Second Circuit and collecting cases). Plaintiffs may recover liquidated damages under both statutes during the time period when both apply, that is, the time period covered by the two-year FLSA statute of limitations.

  Figure 3, below, shows the amount due to each plaintiff as liquidated damages for unpaid wages under the FLSA and NYLL and for unpaid spread of hours pay under the NYLL.  FLSA liquidated damages were calculated as 100% of the unpaid wages award due to each plaintiff for the time period beginning November 27, 2010.  NYLL liquidated damages were calculated as 25% of the unpaid wages and spread of hours awards due to each plaintiff for the time period between

---

[4] The New York law on liquidated damages in cases like this changed on April 9, 2011 to allow for higher awards.  2010 N.Y. Sess. Laws ch. 564 §§ 1, 3 (McKinney).  Thus, for any violations under New York law before April 9, 2011, plaintiffs are entitled to 25% of the amount of their unpaid wages as liquidated damages under the NYLL, and for any violations after April 9, 2011, plaintiffs are entitled to 100% of the amount of their unpaid wages.  N.Y. Lab. Law §§ 198(1–a), 663(1).

November 24, 2009 and April 9, 2011; and 100% of the awards for the time period beginning April 10, 2011. The Court finds that Mr. Martinez is entitled to $82,342.34 as liquidated damages; Mr. Marquez is entitled to $84,039.05 in liquidated damages; and Mr. Ramirez is entitled to $37,063.86 in liquidated damages.

Figure 3: Liquidated Damages Under FLSA and NYLL

| Plaintiff | Pay Period | | Weeks | Unpaid Wages | FLSA Liq. Damages Amt | FLSA Liq. Damages/ Unpaid Wages | NYLL Liq. Damages Amt | NYLL Liq. Damages/ Unpaid Wages | Unpaid Spread of Hours Pay | NYLL Liq. Damages/ SOH Pay |
|---|---|---|---|---|---|---|---|---|---|---|
| | From | To | | | | | | | | |
| **Martinez** | 4/4/2010 | 6/26/2010 | 11 | $3,335.20 | $0 | $0 | 25% | $833.80 | $398.75 | $99.69 |
| | 6/27/2010 | 11/27/2010 | 22 | $8,643.36 | $0 | $0 | 25% | $2,160.84 | $957.00 | $239.25 |
| | 11/28/2010 | 4/9/2011 | 19 | $7,464.72 | 100% | $7,464.72 | 25% | $1,866.18 | $826.50 | $206.63 |
| | 4/10/2011 | 11/17/2012 | 83 | $32,609.04 | 100% | $32,609.04 | 100% | $32,609.04 | $3,610.50 | $3,610.50 |
| | 11/18/2012 | 11/24/2012 | 1 | $303.20 | 100% | $303.20 | 100% | $303.20 | $36.25 | $36.25 |
| Totals per category: | | | | | | $40,376.96 | | $37,773.06 | | $4,192.32 |
| TOTAL = | $82,342.34 | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Marquez** | 11/26/2006 | 11/28/2009 | 157 | n/a | $0 | $0 | $0 | $0 | n/a | $0.00 |
| | 11/29/2009 | 11/27/2010 | 52 | $20,429.76 | $0 | $0 | 25% | $5,107.44 | $2,262.00 | $565.50 |
| | 11/28/2010 | 4/9/2011 | 19 | $7,464.72 | 100% | $7,464.72 | 25% | $1,866.18 | $826.50 | $206.63 |
| | 4/10/2011 | 11/17/2012 | 83 | $32,609.04 | 100% | $32,609.04 | 100% | $32,609.04 | $3,610.50 | $3,610.50 |
| | 11/18/2012 | 11/24/2012 | 1 | $0 | 100% | $0 | 100% | $0 | $0 | $0.00 |
| Totals per category: | | | | | | $40,073.76 | | $39,582.66 | | $4,382.63 |
| TOTAL = | $84,039.05 | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Ramirez** | 11/26/2006 | 11/28/2009 | 157 | n/a | $0 | $0 | $0 | $0 | n/a | $0.00 |
| | 11/29/2009 | 11/27/2010 | 52 | $17,584.32 | $0 | $0 | 25% | $4,396.08 | $2,262.00 | $565.50 |
| | 11/28/2010 | 4/9/2011 | 19 | $6,425.04 | 100% | $6,425.04 | 25% | $1,606.26 | $826.50 | $206.63 |
| | 4/10/2011 | 10/1/2011 | 25 | $8,454.00 | 100% | $8,454.00 | 100% | $8,454.00 | $1,087.50 | $1,087.50 |
| | 10/2/2011 | 12/31/2011 | 13 | $2,698.80 | 100% | $2,698.80 | 100% | $2,698.80 | $471.25 | $471.25 |
| Totals per category: | | | | | | $17,577.84 | | $17,155.14 | | $2,330.88 |
| TOTAL = | $37,063.86 | | | | | | | | | |

## D. Other Awards

### 1. *Pre-Judgment Interest*

As outlined above, the liquidated damages provisions of the FLSA and NYLL serve different purposes: such damages are compensatory under the FLSA and punitive under the NYLL, hence plaintiffs may recover both. Under New York law, pre-judgment interest—like an FLSA

liquidated damages award—is compensatory. *See J. D'Addario & Co. v. Embassy Indus., Inc.*, 20 N.Y.3d 113, 117 (2012) ("The principle behind prejudgment interest is that the breaching party should compensate the wronged party for the loss of use of the money."); *cf.* N.Y. C.P.L.R. § 5001 ("Interest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property . . . ."). Thus, plaintiffs cannot recover pre-judgment interest in addition to FLSA liquidated damages. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 715 (1945) ("To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages.")

However, because NYLL liquidated damages are punitive—rather than compensatory—in nature, pre-judgment interest on an NYLL wages or liquidated damages award is not duplicative where there is no corresponding FLSA liquidated damages award. *See Tackie v. Keff Enterprises LLC*, 14-cv-2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014). Thus, plaintiffs may recover pre-judgment interest for damages awarded under the NYLL which are outside the FLSA statute of limitations, at New York's nine percent statutory rate. *See McLean v. Garage Mgmt. Corp.*, 10-cv-3950 (DLC), 2012 WL 1358739, at *11 (S.D.N.Y. Apr. 19, 2012) (quoting *Thomas v. iStar Financial, Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011)) ("Because prejudgment interest 'can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate.'"); N.Y. C.P.L.R. §§ 5001(b), 5004. In wage and hour cases like this one, courts generally compute interest from a "median date between the earliest ascertainable date the cause of action existed and the date the action was filed or last date the cause of action existed." *Yuquilema v. Manhattan's Hero Corp.*, 13-cv-461 (WHP) (JLC), 2014 WL 4207106, at *12 (S.D.N.Y. Aug. 20, 2014) (quoting *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases)).

Thus, for Mr. Marquez and Mr. Ramirez, interest shall be computed from November 27, 2008, the midpoint of the period between November 27, 2006 and November 27, 2010, which is the

time during which plaintiffs' claims are subject only to the NYLL because they fall outside the FLSA statute of limitations. For Mr. Martinez, whose claims subject to prejudgment interest arose only between April 4, 2010 and November 27, 2010, interest shall be computed from May 12, 2010, the midpoint of those dates. The Clerk of Court is directed to compute interest from these dates for the amounts awarded under the NYLL before November 27, 2010, and to include the computed interest amount with the total sum awarded to each plaintiff. *See* N.Y. C.P.L.R. § 5001(c).

### 2. Costs and Attorney's Fees

Both the FLSA and NYLL allow prevailing plaintiffs to recover costs and reasonable attorneys' fees. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Plaintiffs therefore may recover both costs and reasonable attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, judgment will be entered in favor of each plaintiff against all three defendants, jointly and severally, in the amounts of: $140,963.24 plus interest for Mr. Martinez; $218,017.35 plus interest for Mr. Marquez; and $146,108.87 plus interest for Mr. Ramirez, as specified in the damages charts in Figures 1, 2, and 3, above.

Plaintiffs shall submit an application for attorneys' fees and costs by October 29, 2014. Defendants' opposition, if any, to the application for fees and costs is due by November 3, 2014.

SO ORDERED.

Dated: October 22, 2014
New York, New York

_____
GREGORY H. WOODS
United States District Judge